A94A0651, A94A0652. FULLER v. JENNINGS et al.;
and vice versa.
(445 SE2d 796)

SMITH, Judge.

Patricia Fuller brought this malicious prosecution action against her father, Charles Jennings, and two uncles, Gerald and Robert Jennings. The trial court denied the Jennings brothers' motion for summary judgment, and the case proceeded to trial before a jury. At the close of Fuller's evidence, the trial court directed a verdict in favor of the Jennings brothers. Fuller appeals the grant of the motion for directed verdict, and in their cross-appeal the Jennings brothers appeal the denial of their motion for summary judgment. In the main appeal, we conclude that some evidence existed of malice and absence of probable cause on the part of the Jennings brothers, and accordingly we must reverse the trial court's grant of a directed verdict. In the cross-appeal, we conclude that material issues of fact remain in dispute as to malice and probable cause, and affirm the trial court's denial of summary judgment.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. . . . Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for the jury's resolution." (Citations and punctuation omitted.) *Jones v. Abel*, 209 Ga. App. 889, 890 (2) (434 SE2d 822) (1993). Likewise, on summary judgment we construe the evidence most favorably to the non-movant, and give that party the benefit of all favorable inferences and reasonable doubts which may arise from the evidence. *Padgett v. M & M Super Market*, 195 Ga. App. 799, 800 (395 SE2d 245) (1990).

So viewed, the evidence showed that Fuller is the biological daughter of Charles Jennings. However, he testified that they "weren't having any relationship," and she had lived with her grandfather, Vernon Jennings, since the age of three. Fuller testified that her mother had given her to her grandparents to raise, and her father never contributed to her support. She lived with her father and stepmother briefly after graduating from high school, but returned to her grandparents because her father and stepmother physically abused her. There was testimony that Fuller and her husband had a very close relationship with Vernon Jennings and that on a previous occasion Vernon Jennings had given Fuller a check for $1,000 as a birthday present.

Fuller testified that Vernon Jennings signed a check payable to her for $10,000 to reimburse her for the expenses of a private room at the nursing home where he lived, and for clothing and other items she had purchased for him over the years and planned to purchase in the future. Vernon Jennings testified by affidavit, on videotape and in a videotaped deposition that he gave Fuller the money, and that she did not steal it.

There was some evidence that Charles Jennings originally told the bank that handled Vernon Jennings's account that Fuller forged the check. The Jennings brothers later contended that Fuller had influenced or tricked Vernon Jennings into signing the check, that his "mind was not accurate" and that he had Alzheimer's disease. However, Vernon Jennings was examined by a physician and found to be competent, and Fuller called a number of witnesses who testified that he was of sound mind and rational.

There was evidence of substantial ill-feeling between Fuller and the Jennings brothers, particularly regarding the care of Vernon Jennings. Fuller presented evidence that after the death of Vernon Jennings's wife, Charles and Gerald Jennings sold Vernon Jennings's residence without his knowledge or consent and placed him in a nursing home. There was evidence that Vernon Jennings was upset and distressed by these events. The sale of the residence was made pursuant to a power of attorney obtained by Charles Jennings; there was evidence that the Jennings brothers misrepresented the nature of the power of attorney to Vernon Jennings and the witnesses to his signature. From the sale of Vernon Jennings's house, $25,000 went into the account on which the $10,000 check was drawn, and its ultimate disposition was in dispute. Charles Jennings testified that $25,000 was paid to the nursing home, but he also testified that the fees at the nursing home were $48 to $50 per month. There was also evidence that $15,000 from one of Vernon Jennings's bank accounts was withdrawn and divided among the three brothers. Fuller argues from this evidence that the Jennings brothers were liquidating Vernon Jen-

nings's assets and dividing them among themselves, and that they sought to take the $10,000 from her for their own benefit.

A police officer conducted a videotaped interview of Vernon Jennings regarding the $10,000 check. A person identified only as "an individual" and another identified only as "an individual Jennings" were present at that interview but not identified at the beginning of the tape. Charles Jennings acknowledged that he and his brother Gerald arranged the interview. During the interview, the police officer asked the other individuals present: "Can y'all think of anything else?" and one or both of them directed several questions to Vernon Jennings which were relayed by the police officer.

Fuller also testified that the same police officer called her on the telephone and told her she was a thief and had stolen from her grandfather. She testified that she refused to discuss the matter with the officer because she did not know who he was and was angry at the accusations. An arrest warrant was executed by this police officer, but it lay dormant for many months. Fuller presented evidence from a court bailiff that Charles Jennings appeared at the courthouse before Fuller's criminal trial and met with the district attorney, "when he was, they was talking about trying, getting a case to bring to the court." Asked if Charles Jennings ever told him anything about the case, the bailiff testified that Jennings told him "one of his daddy's granddaughters was trying to take $10,000 from him, and he wanted it, or had took it, or he thought she did. . . . And he was going to try to get it back. He was going to take, he thought he'd take it to civil court, you know, but said that was going to cost him too much money, said he wouldn't make any money like that. And he was going to try to get the district attorney to take it to the grand jury, and that way he'd come out better, it wouldn't cost him anything much." Approximately one year after the issuance of the arrest warrant, without any further contact from the police and without appearing before a magistrate or the grand jury, Fuller was indicted on two counts of theft by taking. She was acquitted by a jury, and this action followed.

1. In the main appeal, Case No. A94A0651, Fuller appeals the trial court's directed verdict in favor of the Jennings brothers. The trial court granted a directed verdict on the basis that there was no showing that the Jennings brothers urged Fuller's prosecution. "Among the essential elements of a claim for malicious prosecution are (1) a prosecution instituted maliciously and (2) without probable cause which (3) has terminated favorably to the plaintiff." (Citations and punctuation omitted.) *Williams v. Taylor*, 202 Ga. App. 720, 721 (415 SE2d 498) (1992). Unless the facts regarding probable cause are undisputed, it is a question for the jury. OCGA § 51-7-43; *Gantt v. Patient Communications Systems*, 200 Ga. App. 35, 38 (2) (a) (406 SE2d 796) (1991). Once a criminal matter is bound over by the magis-

trate or an indictment issues, that is prima facie but not conclusive evidence of probable cause. *Monroe v. Sigler*, 256 Ga. 759, 760 (3) (353 SE2d 23) (1987). This prima facie evidence may be rebutted by direct or circumstantial evidence. *Auld v. Colonial Stores*, 76 Ga. App. 329, 336 (2) (45 SE2d 827) (1947).

In directing a verdict the trial court relied upon *Atlantic Zayre v. Zachary*, 205 Ga. App. 481 (422 SE2d 667) (1992), to hold there was no evidence that the Jennings brothers urged action or played a role in the decision to prosecute, and they merely provided the authorities with information. However, the facts of this case differ substantially from those in *Atlantic Zayre*. There, no evidence was presented that Zayre's agents had any knowledge of the lack of truthfulness of the allegations against the plaintiff. 205 Ga. App. at 482. In this case, in contrast, the alleged victim repeatedly testified before and during the prosecution that no crime had been committed. " ' "[I]f the informer knew that the facts stated were false, it is clear that he attempted to influence the officer's judgment and he is, therefore, responsible for such subsequent action as may be taken." ' [Cit.]" *Martin v. Reitz*, 152 Ga. App. 854, 856 (264 SE2d 305) (1980).

Moreover, there was evidence from which the jury could have concluded that the Jennings brothers urged action or played a role in the decision to prosecute Fuller. Charles and Gerald Jennings were present during a videotaped police interview of Vernon Jennings, and to some extent directed the questioning. A witness testified that Charles Jennings met with the district attorney, and Charles Jennings stated to the same witness that he was seeking criminal prosecution to recover money for himself, as an alternative to a more expensive civil action. This admission "announced an ulterior motive for the prosecution and raised a strong inference of malice. This, too, is an inference of fact to be drawn by a jury." *Auld*, supra, 76 Ga. App. at 337 (3). Evidence that Charles Jennings was observed meeting with the district attorney, standing alone, might be insufficient for the jury to draw any inference regarding the subject of that meeting. However, taken in context with testimony that Jennings was "trying, getting a case to bring to the court," and Jennings's statement regarding his purpose in pursuing that case, there was sufficient evidence for Fuller's claims to go to the jury.

Vernon Jennings testified on at least three occasions before Fuller's trial that he had given Fuller the money, and she did not steal it from him. "Even if on instigating the prosecution the prosecutor had probable cause at the commencement, if he afterwards acquired knowledge, or the reasonable means of knowledge, that the charge was not well founded, his continuation of the prosecution is evidence of the want of probable cause, requiring that the question be submitted to the jury." (Citations, punctuation and emphasis omit-

ted.) *Munford, Inc. v. Anglin,* 174 Ga. App. 290, 291 (1) (329 SE2d 526) (1985). The Jennings brothers contend that this evidence was insufficient because Vernon Jennings was an elderly man, ill and easily confused, and had made statements which could be construed as contradictory. They also discount the testimony of Fuller's witnesses, whom they characterize as "friends and partisans." However, this court cannot weigh evidence or decide issues of fact. The jury is present in the courtroom and has the opportunity — indeed, the duty — to observe and evaluate the credibility of witnesses and weigh their conflicting testimony, as we cannot. *Three Notch EMC v. Simpson,* 208 Ga. App. 227, 229-230 (1) (430 SE2d 52) (1993).

This action is a fiercely disputed contest between close relatives, with widely diverging accounts of the events leading to Fuller's prosecution and acquittal. "Although a directed verdict would had been proper if [Fuller] simply failed to prove [her] case [cit.], we are satisfied the evidence is in conflict, and with all inferences that reasonably might be drawn therefrom, does not *demand* a verdict in favor of [the Jennings brothers]." (Emphasis in original.) *Moore v. American Suzuki Motor Corp.,* 203 Ga. App. 189, 190 (1) (416 SE2d 807) (1992). There is some evidence of lack of probable cause as well as of malice. This is an appropriate case for jury resolution, and we must reverse the trial court's directed verdict in favor of the Jennings brothers.

2. In the cross-appeal, Case No. A94A0652, Fuller's motion to dismiss is denied. Where a verdict is overturned, the issue of summary judgment is no longer moot. *Schirmer v. Amoroso,* 209 Ga. App. 682, 683 (434 SE2d 80) (1993). If a directed verdict is granted before a party has the opportunity to present the evidence on which an earlier motion for summary judgment was based, this court may consider the denial of summary judgment. *Justus v. Justus,* 198 Ga. App. 533, 534 (1) (402 SE2d 126) (1991).

There was evidence presented on summary judgment which was not adduced at trial because the Jennings brothers did not present their case, and the Jennings brothers contend this additional evidence entitles them to summary judgment. However, as discussed in Division 1, above, virtually every point was in dispute and controverted by Fuller either in opposition to the motion or at trial. While there is some evidence that Fuller refused to cooperate with the police, there is also evidence that she was called on the telephone and accused in blunt fashion by an individual whom she did not know, then not contacted again until after her indictment. The Jennings brothers contend Fuller's deposit of the check was irregular; she offered an explanation for her conduct. The police officer who investigated the case swore by affidavit that he relied wholly upon his independent judgment in investigating the case. However, this affidavit is not uncontroverted. There is evidence that one or more of the Jennings broth-

ers prompted the officer and proposed questions during the videotaped interview of Vernon Jennings, and that the officer deferred to them in his questioning. Moreover, there was testimony that the police officer was hostile to individuals who gave information tending to exonerate Fuller. Finally, there was testimony presented by Fuller on summary judgment that was not presented at trial and which tends further to support her contentions. The record presents disputed issues of material fact which clearly are inappropriate for resolution on summary judgment.

The Jennings brothers contend there was probable cause for Fuller's prosecution as a matter of law, because Fuller did not move for directed verdict of acquittal in the criminal prosecution. As the trial court correctly held in its order on summary judgment, this contention has no merit. *Bi-Lo, Inc. v. McConnell*, 199 Ga. App. 154, 156-157 (4) (404 SE2d 327) (1991). The trial court did not err in denying the Jennings brothers' motion for summary judgment.

*Judgment affirmed in Case No. A94A0652. Judgment reversed in Case No. A94A0651. Pope, C. J., and Johnson, J., concur.*

DECIDED JUNE 23, 1994 —
RECONSIDERATION DENIED JULY 8, 1994 — ▮▮▮▮▮▮

*Paul T. Wright*, for appellant.
Patricia Fuller, *pro se.*
*Branch, Pike & Ganz, Gregory J. Digel, Mary Jo Schrade, Irwin & Taylor, R. Chris Irwin, William M. Schiller*, for appellees.