### A09A0299. GOOCH v. TUDOR.
(674 SE2d 331)

BLACKBURN, Presiding Judge.

Dale Gooch appeals from two separate orders of the trial court, entered following a bench trial; he asserts that the trial court erred in: (1) finding in favor of Dede Tudor on her claim against Gooch for malicious prosecution; (2) awarding Tudor punitive damages; and (3) granting Tudor's motion for a directed verdict on Gooch's claim for trover and cancelling the notice of lis pendens he had filed against Tudor's property. Discerning no error, we affirm.

> While we apply a de novo standard of review to any questions of law decided by the trial court, factual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

(Citations and punctuation omitted.) *Lifestyle Home Rentals, LLC v. Rahman*.[1]

So viewed, the evidence shows that in the fall of 2006, Gooch contracted with Tudor to build a fence around the perimeter of her property. The parties agreed that Tudor would pay $10.25 per linear foot of fence, with the entire amount being due upon completion of the fence. During the course of the fence construction, the parties further agreed that Gooch would build several fence partitions with gates, on interior portions of the property. Gooch and Tudor also agreed that Gooch would install a custom-built wrought iron gate and latch and specially-made gate posts at the front entrance to the property.

The project took over a month to complete and, after he finished construction, Gooch presented Tudor with a bill for $27,277.50. According to Gooch, Tudor told him she did not have the money to pay the bill. Tudor, however, testified that she had repeatedly asked Gooch for an estimate of the total cost of the completed project both

---

[1] *Lifestyle Home Rentals, LLC v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

prior to and during the construction of the fence, that Gooch had refused to provide such an estimate, and that she was unprepared to receive so large a bill. She therefore told Gooch that she could pay him $10,000 toward the fence, but would need to check with her bank about the availability of additional funds before writing him a larger check. Gooch declined the offer of a $10,000 payment and demanded payment of the entire bill. Tudor specifically denied telling Gooch that she had no money to pay his bill.

Two to three days later, Tudor sent Gooch a letter, enclosing a check for $10,000 and stating that the check represented "payment towards material and labor" and that "[t]he balance remains in dispute." After receiving this letter, Gooch telephoned Tudor and she explained to him that the $10,000 check represented "a down payment toward the job, that he had provided me services, but I was in dispute with the rest of the amount because I hadn't really ever approved of all the work he was doing." In response, Gooch told Tudor that he would have to take the matter "before the magistrate judge."

Following his phone conversation with Tudor, Gooch went to the local magistrate to obtain his assistance in getting full payment for the fence. The magistrate advised Gooch that he should not cash Tudor's check, because if he did so he would not be able to collect the balance of his bill. The magistrate further advised Gooch not to have any further personal contact with Tudor.

After meeting with the magistrate, Gooch sent Tudor a letter, dated November 15, 2006, informing her that if she did not pay the bill for the fence within ten days, "the magistrate judge will set up an appointment for you and [me] to meet at his office to discuss this matter." Tudor sent no further payment toward the fence, and on December 6, 2006, Gooch made an application to the magistrate for a criminal warrant, claiming that Tudor had committed theft by deception.[2] Gooch executed an affidavit in support of that application, asserting that Tudor "had intentionally refused to pay for the completed fencing job after [it] was finished." Upon receipt of the warrant application, the magistrate scheduled a show cause hearing for January 10, 2007, and sent notice of the same to Tudor.

When Tudor appeared for the show cause hearing, the magistrate first had the parties attempt to mediate the dispute. When Tudor and Gooch could not reach an agreement, the magistrate told Gooch he would "take care of it," and proceeded with the hearing. Following the hearing, the magistrate had Gooch execute a second affidavit, in which he again asserted that Tudor had refused to pay

---

[2] OCGA § 16-8-3.

for the fencing job upon its completion. Based on that affidavit, the magistrate issued an arrest warrant for Tudor, who was immediately taken into custody and placed in the Lumpkin County jail. Tudor spent two nights in jail before she was able to arrange for a bonding company to post the bail necessary for her release.

The Lumpkin County District Attorney's office refused to prosecute Tudor, citing the fact that the case represented a civil, rather than a criminal, matter. Gooch then initiated the current litigation, alleging that Tudor had breached the parties' oral contract by refusing to pay him for the fence. Gooch also asserted a cause of action for trover, claiming that because they had not been paid for, the materials used to construct the fence were his personalty, wrongly retained by Tudor. In connection with his trover action, Gooch filed a notice of lis pendens against Tudor's property. Tudor counterclaimed for malicious prosecution and sought punitive damages against Gooch. After the trial court denied Gooch's pre-trial motion for summary judgment on Tudor's counterclaim, the parties proceeded with a bench trial.

Following trial, the trial court granted Tudor's motion for a directed verdict on Gooch's trover claim and entered an order cancelling the notice of lis pendens against Tudor's property. The trial court also found in favor of Gooch on his breach-of-contract claim and found in favor of Tudor on her counterclaim for malicious prosecution. The trial court entered an order awarding Gooch $27,277.50 in actual damages and awarding Tudor $21,615 in compensatory damages and $2,500 in punitive damages. This appeal followed.

1. To prevail on her claim for malicious prosecution, Tudor was required to prove that (i) she was prosecuted for a criminal offense; (ii) the prosecution was instigated under a valid warrant, accusation, or summons; (iii) the prosecution terminated in her favor; (iv) Gooch acted with malice in instigating the prosecution; (v) Gooch lacked probable cause to accuse Tudor of the crime at issue; and (vi) she suffered damage as a result of the prosecution. See OCGA § 51-7-40; *Medoc Corp. v. Keel*.[3]

On appeal, Gooch argues that the trial court erred in finding in favor of Tudor on this claim because: (i) the evidence showed that he was entitled to summary judgment on that claim; (ii) Tudor failed to show that he acted with malice in swearing out the warrant against her; (iii) Tudor could not prove that he lacked probable cause to sign the affidavits accusing her of theft by deception; and (iv) his reliance

---

[3] *Medoc Corp. v. Keel*, 166 Ga. App. 615, 615-616 (1) (305 SE2d 134) (1983).

on the advice of the magistrate operated as a complete defense to Tudor's claim. We address each of these assertions, in turn.

(a) Gooch argues that the trial court erred in denying his motion for summary judgment on Tudor's counterclaim for malicious prosecution. "However, '(a)fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case.' " (Punctuation omitted.) *Moore v. Moore*.[4] See also *Kicklighter v. Woodward*.[5]

(b) We next turn to Gooch's assertion that Tudor failed to prove he acted maliciously in instigating her prosecution for theft by deception.

"The malice contemplated by law in an action for malicious prosecution is the same as in an action for malicious arrest, and may consist in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual." (Punctuation omitted.) *Melton v. LaCalamito*.[6] Malice may be inferred where the defendant makes a false statement to police for the purpose of achieving some personal goal, such as revenge or the collection of a debt. See *Powell v. Cohen*.[7] Malice may also be found where the plaintiff's arrest is premised on the defendant's knowingly false statement to the police, regardless of the defendant's motive. See *Melton*, supra, 158 Ga. App. at 824-825 (2) (c).

Gooch argues that Tudor could not prove malice because, given the fact that she refused to pay the entire bill upon receipt of the same, the statements in his affidavits that Tudor had refused to pay for the fence were not false. This argument, however, ignores the evidence refuting those statements. Specifically, the evidence showed that Tudor had made a $10,000 payment toward the fence, but that she disputed the total amount of the bill. Additionally, Tudor testified that she had told Gooch the $10,000 represented a down payment toward the fence, and indicated that she was willing to pay additional monies toward the fence, but did not believe the total cost was in excess of $27,000. In other words, while Tudor disputed the amount owed, Gooch knew that she was not, in fact, refusing to pay for the fence. The trial court clearly elected to credit Tudor's testimony, and on appeal we must defer to that decision. See, e.g., *Fuller v. Jennings*[8] ("this court cannot weigh evidence or decide issues of fact. The [factfinder] is present in the courtroom and has

---

[4] *Moore v. Moore*, 281 Ga. 81, 85 (6) (635 SE2d 107) (2006).

[5] *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996).

[6] *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (c) (282 SE2d 393) (1981).

[7] *Powell v. Cohen*, 116 Ga. App. 48, 50-51 (156 SE2d 495) (1967).

[8] *Fuller v. Jennings*, 213 Ga. App. 773, 777 (1) (445 SE2d 796) (1994).

the opportunity — indeed, the duty — to observe and evaluate the credibility of witnesses and weigh their conflicting testimony, as we cannot. [Cit.]'').

Gooch also claims that Tudor could not prove malice because the evidence showed he did not want Tudor arrested. Whether Gooch was actually seeking Tudor's arrest, however, is not determinative of his liability. Rather, the question is whether his conduct resulted in the initiation of criminal proceedings against Tudor. See *Melton*, supra, 158 Ga. App. at 822 (2) (a) (liability for malicious prosecution exists even where "the initiation of the criminal action [was] not . . . expressly directed by the party to be held liable [cits.]"). Here, the evidence supports the conclusion that, even though Gooch was not seeking Tudor's arrest, he was seeking to use the threat of criminal prosecution for the purpose of collecting his bill. That evidence includes Gooch's testimony that he had gone to the magistrate on at least two previous occasions to obtain his assistance in collecting money he was owed under a contract and that the magistrate was good at collecting money for him. Additionally, after the magistrate ordered Tudor's arrest at the show cause hearing, Gooch told him: "[T]hat's not what I wanted. I wanted you to make her give me my money." Thus, by his own admission, Gooch wanted to use the threat of criminal prosecution for the purpose of coercing Tudor into paying his entire bill. To that end, Gooch was willing to sign sworn affidavits stating that Tudor had committed criminal fraud against him. The fact that his execution of those false statements had consequences he did not intend is insufficient to absolve Gooch of liability for making them.

(c) Nor do we find any merit in Gooch's claim that the evidence failed to show that he lacked probable cause to accuse Tudor of theft by deception.

> In malicious prosecution actions . . . [, t]he question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the [factfinder], but whether they amount to probable cause is a question of law for the court.

(Citations and punctuation omitted.) *Melton*, supra, 158 Ga. App. at 823 (2) (b).

> Probable cause is defined to be the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged was guilty of the crime for which he was prosecuted. . . . [T]he belief must be sup-

ported by appearances known to the defendant at the time [he initiates the prosecution], and . . . [t]he appearances must be such as to lead a reasonable man to set the criminal proceeding in motion.

(Punctuation and emphasis omitted.) Id. at 823-824 (2) (b). "[D]ismissal of the charge is evidence that probable cause was lacking" (id. at 824 (2) (b)), and a lack of probable cause exists, as a matter of law, where "the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." OCGA § 51-7-43.

The undisputed facts of record in this case, when viewed in conjunction with *Powell*, supra, 116 Ga. App. at 50-51, support the trial court's legal conclusion that Gooch lacked probable cause to initiate criminal proceedings against Tudor. In *Powell*, the plaintiff had stopped payment on a check given to the defendant for bicycle repairs, alleging that the repairs had not been made. The defendant then swore out a warrant against the plaintiff for criminal fraud, and the plaintiff spent two days in jail before making bond. Following his acquittal, the plaintiff sued for malicious prosecution, but the trial court dismissed his complaint on the grounds he had failed to allege facts showing a lack of probable cause. This Court reversed, holding that the facts alleged were sufficient to send the question of probable cause to a jury, explaining:

> The gravamen of the offense charged is the intent to defraud, the obtaining of something of value without paying for it; where the party receiving the check parts with nothing of value in return for it the offense is not proved. The plaintiff here alleges that he stopped payment on the check because the repairs for which the check was given were not made. If the defendant, knowing these facts to be true, procured the prosecution by false testimony as alleged, such misconduct would amount to malicious prosecution.

(Citation omitted.) Id.

Similarly, Gooch accused Tudor of criminal fraud by asserting that she was refusing to pay for the fence. The evidence, however, supported a finding that Gooch knew this statement to be untrue, and was merely filing the accusation to pressure Tudor into paying the fence bill as presented, regardless of whether she had valid reasons for challenging the amount charged. Thus, the trial court properly found that Gooch lacked probable cause.

(d) Gooch further argues that he is insulated from liability because the magistrate found probable cause to issue the arrest

warrant. See *Hicks v. Brantley*[9] (where a person acting in good faith truthfully communicates facts to officers of the court, he cannot be held liable for any subsequent prosecution of an individual, even if that prosecution ended in an acquittal). The rule that insulates a defendant from liability where a magistrate finds probable cause for arrest, however, presumes that the magistrate in question is a neutral, disinterested third party. That presumption does not apply in this case. The record contains substantial evidence showing that, rather than being disinterested, the magistrate was working to assist Gooch in using the threat of a criminal prosecution to coerce Tudor into dropping any questions she had about Gooch's work or his bill for that work.

First, the magistrate's neutrality was compromised by the fact that he advised Gooch on how to proceed against Tudor.[10] Specifically, the magistrate advised Gooch: (i) not to cash Tudor's check for payment toward the fence; (ii) not to have further contact with Tudor; and (iii) to make an application for a criminal warrant without filing a police report. Additionally, both Gooch and the magistrate testified that they had four to five ex parte meetings about the case after Gooch filed the application for a criminal warrant, but before the show cause hearing. Finally, the fact that the magistrate had used his office to collect payment for Gooch on at least two prior occasions, presumably by threatening the other party with the possibility of prosecution, indicated that the magistrate was, in essence, working to get Gooch paid. Indeed, the magistrate admitted as much, testifying about the proceeding against Tudor by saying: "Basically, Mr. Gooch was just trying to — of course, he's done a job and he — of course, he wanted to get paid for it."

The evidence further showed that, despite his testimony to the contrary, the magistrate was aware that this was a civil matter, and that he therefore lacked probable cause to issue an arrest warrant for Tudor. That evidence included the testimony of the district attorney, who stated that he spoke with the magistrate prior to the show cause hearing, and explained that this was a civil dispute. Moreover, before proceeding with the show cause hearing on the warrant, the magistrate referred the parties to mediation.[11] We note that punishment

---

[9] *Hicks v. Brantley*, 102 Ga. 264 (2) (a) (29 SE 459) (1897).

[10] In his brief, Gooch argues that he was entitled to rely on the advice of the magistrate "in much the same way as one may rely on the advice of counsel." It is axiomatic, however, that it is not the function of a judicial officer to dispense advice to one party as to how to best proceed against another party, particularly where such advice is being dispensed via ex parte communications with the court.

[11] This Court is aware that Rule 2.1 of the Uniform Rules for Dispute Resolution Programs allows a judge to refer a criminal case to mediation, under appropriate circumstances. Constitutional safeguards for individuals are not affected by such referral.

under a criminal statute may not be used for the collection of a debt, contractual or otherwise.

> The constitution of Georgia provides that "There shall be no imprisonment for debt." The gravamen of the offense chargeable under [the criminal fraud statutes] is the fraud perpetrated, and these sections have for their purpose solely the punishment of fraud, and not the creation of a remedy for the collection of debts or the compelling of the performance of contracts.

(Citation and punctuation omitted.) *Bullard v. State.*[12] See also *Broddus v. State*[13] (the offense of theft by deception does not encompass the failure to pay contractual debts but instead punishes fraud, and "the fraudulent conduct of the defendant is the gist of the crime, not merely his failure to perform the contract"); *Holt v. State*[14] ("[m]ere proof that the defendant failed to carry out [a] contract does not give rise to a presumption that he did so without good and sufficient cause," and therefore cannot support a conviction for theft by deception).

2. Although not set forth as a separate enumeration of error, Gooch also asserts that the evidence was insufficient to support an award of punitive damages against him. We disagree.

Under OCGA § 51-12-5.1 (b),

> [p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Gooch's conduct in attempting to use the threat of criminal prosecution to pressure a client into paying a disputed bill meets this standard. Cf. *Waller v. Rymer;*[15] *Willis v. Brassell.*[16]

3. The trial court granted Tudor's motion for a directed verdict on Gooch's trover claim, finding that because of the way they were installed, the fencing materials were "attached permanently to the land and [were] not personalty and therefore not subject to a claim

---

[12] *Bullard v. State,* 60 Ga. App. 33, 34 (4) (2 SE2d 725) (1939).
[13] *Broddus v. State,* 65 Ga. App. 27, 29 (2) (14 SE2d 607) (1941).
[14] *Holt v. State,* 184 Ga. App. 664, 666 (1) (362 SE2d 464) (1987).
[15] *Waller v. Rymer,* 293 Ga. App. 833, 836 (1) (668 SE2d 470) (2008).
[16] *Willis v. Brassell,* 220 Ga. App. 348, 354 (5) (469 SE2d 733) (1996).

of trover." Although on appeal Gooch asserts that the trial court erred in granting a directed verdict, he fails to offer any argument, citation of authority, or record citations to show why the trial court's findings of fact and conclusions of law on this issue were incorrect. Accordingly, this claim of error is deemed abandoned. See *Glass v. State*.[17] And, given that Gooch's counsel conceded to the trial court "that the only ground for the [notice of] Lis Pendens [against Tudor's property] was . . . the trover claim," he cannot prevail on his argument that the trial court erred in granting Tudor's motion to cancel that notice of lis pendens.

For the reasons set forth above, we affirm the judgment of the trial court.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED FEBRUARY 16, 2009 —
RECONSIDERATION DENIED MARCH 4, 2009.

*Bovis, Kyle & Burch, Charles M. Medlin, Melissa A. Tracy, Wayne S. Tartline*, for appellant.
*Stroud P. Stacy II*, for appellee.

---

[17] *Glass v. State*, 255 Ga. App. 390, 398 (9) (b) (565 SE2d 500) (2002).