**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 20, 2020**

# In the Court of Appeals of Georgia

A19A1685. SHEFFIELD v. FUTCH et al.;
A19A1686. FUTCH et al. v. SHEFFIELD;
A19A1687. FUTCH et al. v. SHEFFIELD.

MCMILLIAN, Presiding Judge.

In December 2014, Kim Sheffield filed suit against Covered Wagon Trailers, LLC ("Covered Wagon"), Gerald Pryor, and Jim Futch (collectively "the Defendants"), asserting multiple claims after his arrest and incarceration arising from the Defendants' efforts to recoup a business debt. The Defendants moved for summary judgment, which the trial court granted in part and denied in part. In Case No. A19A1685, Sheffield appeals the trial court's grant of summary judgment in favor of the Defendants on his claim for false arrest. In Case Nos. A19A1686 and A19A1687, the Defendants cross-appeal the trial court's denial of summary judgment

on Sheffield's claims for false imprisonment, malicious prosecution, and punitive damages.[1] For the reasons that follow, we find no error and affirm in all respects.

We begin by noting that summary judgment is proper

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

OCGA § 9-11-56 (c). Thus, "the moving party must demonstrate that there is no genuine issue of material fact so that the party is entitled to judgment as a matter of law." (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). "A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." (Citation and punctuation omitted.) Id. In our de novo review of the grant or denial of a motion for summary judgment, "we must view the evidence and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Johnson St. Properties, LLC v. Clure*, 302 Ga. 51, 52 (1) (805 SE2d 60) (2017).

---

[1] Because the parties appeal from the same order, we have consolidated these cases for appellate review.

With these principles in mind, the record shows that Sheffield was the owner of Xtra Tuff Trailers, LLC ("Xtra Tuff"), a company that sold pull-behind trailers.[2] In 2010, Pryor formed Covered Wagon and began selling both stock and custom enclosed trailers to Xtra Tuff on an open account.[3] Although the parties did not have a written sales agreement, they developed a course of business in which Xtra Tuff wrote a check to Covered Wagon each time it took possession of a trailer and included the VIN for that specific trailer on the memo line. Covered Wagon would deposit the check when payment came due in 90 days. Covered Wagon required cash on delivery for its other clients, but allowed this arrangement to accommodate Xtra Tuff, its largest client. When payment was due on a particular trailer, Covered Wagon would typically notify Xtra Tuff before it deposited the corresponding check.

In April 2011, Futch became the general manager of Covered Wagon and the payment terms were eventually changed from 90 days to 30 days, but Covered Wagon continued to coordinate with Xtra Tuff before depositing the checks it held. A Covered Wagon employee maintained a chart of the trailers sold to Xtra Tuff, along with the payment date for each, and sent the updated chart to Xtra Tuff several times

[2] Xtra Tuff became defunct in late 2012.

[3] Pryor is the sole owner and CEO of Covered Wagon.

each week. In September 2011, Xtra Tuff became delinquent on its account in excess of $100,000. Because it was dissatisfied with Covered Wagon, Xtra Tuff paid its account in full and ceased its business relationship with Covered Wagon. Some time later, Covered Wagon contacted Xtra Tuff, and the parties agreed to resume their prior business arrangement, again with no written contract. Covered Wagon continued to maintain a chart of all trailers sold with a 30-day payment term and to coordinate with Xtra Tuff when particular checks would be deposited.[4]

In August 2012, Xtra Tuff again became delinquent on its account and asked Covered Wagon to temporarily hold the checks longer than 30 days due to a cash flow problem. By October 2012, Xtra Tuff owed $93,000 and was unable to pay the account in full. The parties continued to communicate by email regarding payment, with Xtra Tuff maintaining that it was "working on a solution." On October 25, 2012, Futch and other Covered Wagon employees drove to Xtra Tuff and, after finding it closed, entered the property through a hole in the fence and took possession of six or seven trailers that Covered Wagon had sold to Xtra Tuff.[5] That same day, without

_____

[4] There were a few times that a check deposited by Covered Wagon was returned for insufficient funds, but Covered Wagon employees deposed that Xtra Tuff was responsive in remedying any returned check.

[5] Covered Wagon was able to resell those trailers.

coordinating with Xtra Tuff and knowing that there were insufficient funds in Xtra Tuff's account, Covered Wagon deposited 55 checks in its possession, all of which were returned due to insufficient funds.[6] Sixteen checks represented trailers that had been delivered less than 30 days prior, with four additional checks exactly 30 days old. After the checks were returned, Pryor instructed Futch to go to a magistrate judge to see how they could get paid.

Futch first went to the Dodge County Magistrate Court and told someone there that Covered Wagon had "checks that were worthless" and asked what he could do. That person directed Futch to the Ben Hill County Magistrate Court. Futch then spoke to the assistant district attorney in Ben Hill County, but did not learn anything "of any substance." Futch told Pryor of his lack of progress, and they "just decided to go on over to the magistrate's office and see what [they] need to do to get paid." Futch obtained a 10-day "bad check" form letter and purportedly mailed a version to Sheffield on November 1, 2012 via certified mail.[7]

_____

[6] It is unclear from the record whether any of the fifty-five checks had been issued for any of the six or seven trailers that Covered Wagon was able to retrieve from Xtra Tuff's property.

[7] In his deposition, Futch acknowledged that he does not have a return receipt from the certified letter, but claimed that he called the post office to confirm it had been received. However, because of the age of the letter, the post office was no

5

On November 25, Futch met with the magistrate judge in Ben Hill County, presented the returned checks, and was told to return the following day. Futch does not recall whether he informed the judge that Covered Wagon provided invoices to Xtra Tuff for the purchase of the trailers on an open account or that the payment terms were 30 days. When he returned the next day, he received 55 warrants consisting of 37 felony and 18 misdemeanor deposit account fraud charges. Futch read only one of the warrants before signing all 55 warrants so that Covered Wagon would "get paid." He did not ask the magistrate judge to explain any of the language in the warrant, but he understood that the warrants would be sent to law enforcement officials.

On November 29, Sheffield was arrested and remained in custody for 72 days.[8] On behalf of Covered Wagon, Futch submitted a Georgia crime victim impact statement claiming that Sheffield stole 55 trailers. Pryor, acting on behalf of Covered Wagon, also instituted a civil suit against Xtra Tuff in December 2012, seeking to

---

longer able to verify its receipt. The letter itself does not include a date, name, or address.

[8] Sheffield was unable to afford the original $315,000 bond. He was not released until the bond was eventually reduced to $75,000.

recover on the "open account."[9] In December 2013, the district attorney's office dismissed all of the warrants issued against Sheffield. Sheffield filed the underlying suit in June 2014 against Covered Wagon, Futch, and Pryor, asserting claims of fraud, false arrest, false imprisonment, malicious prosecution, and punitive damages.[10] The Defendants moved for summary judgment, and the trial court granted their motion only as to Sheffield's claims for fraud and false arrest. These appeals followed.

*Case No. A19A1685*

1. In his sole enumeration of error, Sheffield asserts that the trial court erred in granting summary judgment in favor of the Defendants on his claim for false arrest.[11] In its order, the trial court found that Sheffield's claims for false arrest and malicious prosecution are mutually exclusive and reasoned that because Sheffield was at some

---

[9] Covered Wagon later dismissed its complaint against Xtra Tuff in September 2014.

[10] Covered Wagon filed a counterclaim against Sheffield and Xtra Tuff, asserting breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, conversion, fraud, and negligent misrepresentation. Those claims are not at issue in these appeals.

[11] Sheffield does not appeal the trial court's grant of summary judgment on his fraud claim.

point brought before a judge after being arrested, he cannot, as a matter of law, also bring a claim for false arrest.

To resolve the question of whether Sheffield may proceed with his claims for false arrest and malicious prosecution, we must first distinguish these types of claims. Georgia law recognizes

> three different related torts in this area, although the distinctions among the three are not always clear in our case law: (1) false imprisonment, which is unlawful detention without judicial process, or without the involvement of a judge at any point; (2) false or malicious arrest, which is detention under process of law; and (3) malicious prosecution, which is detention with judicial process followed by prosecution.

(Citations and punctuation omitted.) *McClendon v. Harper*, 349 Ga. App. 581, 585 (1) (826 SE2d 412) (2019). "The efficacy of each depends upon the particular facts of a situation and who is being sued. Only one, if any, will lie as to a particular defendant in particular circumstances." *Reese v. Clayton County*, 185 Ga. App. 207, 207 (363 SE2d 618) (1987).

OCGA § 51-7-1 defines false arrest as "[a]n arrest under process of law, without probable cause, when made maliciously[.]" An arrest made pursuant to a warrant is an arrest "under process of law." (Citation and punctuation omitted.) *Smith*

8

*v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 343 (1) (765 SE2d 518) (2014). Thus, "[t]he key distinction between false arrest and false imprisonment is whether the person was detained using a warrant or not." (Citation and punctuation omitted.) Id.

Georgia law further distinguishes between false arrest and malicious prosecution.[12] "If after the arrest the warrant is dismissed or not followed up, the remedy is for [false] arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for [false] arrest will not lie." (Citations and punctuation omitted.) *Garner v. Heilig-Meyers Furniture Co.*, 240 Ga. App. 780, 781 (1) (525 SE2d 145) (1999) (claim for false arrest differs from one for malicious prosecution only in that malicious prosecution requires additional element of showing that prosecution was carried on). "The distinction is important because malicious prosecution and [false] arrest are mutually exclusive; if one right of action exists, the other does not." (Citation and punctuation omitted.) *Stephens v. Zimmerman*, 333 Ga. App. 586, 590 (1) (a) (774 SE2d 811) (2015) (physical

---

[12] See OCGA § 51-7-40 ("A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action.").

9

precedent only). For purposes of malicious prosecution, "an inquiry before a committing court or a magistrate shall amount to a prosecution." OCGA § 51-7-42.

On appeal, Sheffield maintains that his claim for false arrest survives because there has been no final adjudication of his malicious prosecution claim and he is entitled to assert alternative claims. However, a genuine issue of material fact does not exist, and Sheffield does not dispute, that his arrest proceeded to prosecution when he was brought before a judge who set his bond and that he remained in jail for 72 days. Thus, to the extent Sheffield may seek redress, his action is one for malicious prosecution and not false arrest. See *Branson v. Donaldson*, 206 Ga. App. 723, 725-26 (1) (c) (426 SE2d 218) (1992) (a proceeding in which the plaintiff, after his arrest, was brought before a magistrate who set bond constitutes an inquiry before a committing court or magistrate). Accordingly, the trial court did not err in granting summary judgment in favor of the Defendants as to Sheffield's claim for false arrest. See *Perry v. Brooks*, 175 Ga. App. 77, 78 (3) (332 SE2d 375) (1985) (false arrest and malicious prosecution are mutually exclusive and if one right of action exists, the other does not).[13]

---

[13] We take this opportunity to note that in *Jones v. Warner*, 301 Ga. App. 39, 40-42 (1) and (2) (686 SE2d 835) (2009), this Court permitted claims for false arrest and malicious prosecution to survive summary judgment, relying on *Wal-Mart Stores*

10

2. In their cross-appeal, the Defendants first assert that the trial court erred in denying their motion for summary judgment on Sheffield's claim for false imprisonment. We are not persuaded.

OCGA § 51-7-20 defines the intentional tort of false imprisonment as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." The Defendants argue that a claim for false imprisonment cannot be maintained because Sheffield was detained pursuant to valid warrants.

Georgia law provides:

> If imprisonment is by virtue of a warrant, neither the party who procured the warrant in good faith nor the officer who executed the warrant in

---

*v. Johnson*, 249 Ga. App. 84 (547 SE2d 320) (2001), overruled on other grounds, *Ferrell v. Mikula*, 295 Ga. App. 326, 333 (672 SE2d 7) (2008). However, in that case, this Court found that the plaintiff was not limited to only one of her alternative claims because different conduct supported each of the claims. *Johnson*, 249 Ga. App. at 87 (2). There was no separate or distinct conduct to support the plaintiff's otherwise mutually exclusive claims in *Jones*. Accordingly, we disapprove of *Jones* to the extent it incorrectly held that false arrest and malicious prosecution are not mutually exclusive remedies. For this reason, we have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required number of judges, however, voted in favor of considering the case en banc.

11

good faith shall be liable for false imprisonment even if the warrant is defective in form or is void for lack of jurisdiction. In such cases, good faith must be determined from the circumstance.

OCGA § 51-7-21. But "[i]n the event that procedurally void or defective process is secured, there is a cause of action for false imprisonment, but only if the process was itself secured in bad faith." (Citations omitted.) *Williams v. Smith*, 179 Ga. App. 712, 714 (2) (348 SE2d 50) (1986). Thus, we turn to whether there is evidence that the Defendants procured procedurally void warrants in bad faith.

A person commits the offense of deposit account fraud when he "makes, draws, utters, executes, or delivers an instrument" with the knowledge that it will not be honored. OCGA § 16-9-20 (a). For the purposes of this Code section, "it is prima facie evidence that the accused knew that the instrument would not be honored" if one of three conditions is met, including:

Payment was refused by the drawee for lack of funds upon presentation within 30 days after delivery and the accused . . . shall not have tendered the holder thereof the amount due thereon, together with a service charge, within ten days after receiving written notice that payment was refused upon such instrument.

12

OCGA § 16-9-20 (a) (2).[14] Pretermitting whether, as they allege, the Defendants met the notice requirements of OCGA § 16-9-20 (a) (2) (A),[15] Defendants have not met their burden as the movant on summary judgment to show that each of the checks executed by Sheffield was presented to the bank within 30 days after delivery. See OCGA § 16-9-20 (a) (2) (underlying payment must have been "refused by the drawee for lack of funds upon presentation *within 30 days* after delivery") (emphasis supplied).[16] As noted above, of the 55 checks at issue, 20 were presented to the bank within 30 days and 35 were presented more than 30 days after they were delivered by

---

[14] The other conditions do not apply here. See OCGA § 16-9-20 (a) (1) and (a) (3).

[15] This subsection provides that notice must be "mailed by certified or registered mail or statutory overnight delivery evidenced by return receipt to the person at the address printed on the instrument or given at the time of issuance" and that such notice "shall be deemed sufficient and equivalent to notice having been received as of the date on the return receipt." OCGA § 16-9-20 (a) (2) (A).

[16] Although OCGA § 16-9-20 (a) (2) (A) provides that written notice must be mailed "to the person at the address printed on the instrument or given at the time of issuance," and there is evidence that the envelope containing the notice was sent to an address other than that printed on the checks executed by Sheffield, our Supreme Court has determined that such a deviation is not fatal to a defendant's immunity where the notice otherwise conformed to the statutory requirements. See *Blue Moon Cycle*, *Inc. v. Jenkins,* 281 Ga. 863, 864 (642 SE2d 637) (2007).

13

Sheffield. Thus, there is evidence to support that the process by which the Defendants secured the warrants was invalid.[17]

As for the good faith requirement, Sheffield has produced evidence from which a jury could determine that the Defendants did not act in good faith in procuring the warrants to collect a debt owed by Xtra Tuff where Futch, at Pryor's direction, sought warrants for each of the 55 returned checks without notifying the magistrate judge that the trailers had been delivered pursuant to a 30-day payment term and the checks were not given for "present consideration" as asserted in the warrants. Likewise, there is no evidence in the record that Futch informed the magistrate that for at least some of the checks, Covered Wagon had already repossessed the trailers. See *Lagroon v. Lawson*, 328 Ga. App. 614, 623 (4) (a) (759 SE2d 878) (2014) (physical precedent only) (defendant's belief not honest or reasonable where there is evidence he knew the information supplied to commence prosecution was false, failed to set forth a full, fair and complete statement of the facts, or concealed facts); *Dixon v. Krause*, 333 Ga. App. 416, 421 (773 SE2d 40) (2015).

---

[17] We express no opinion on the issue of whether the warrants were obtained through defective process, which must be decided by the fact finder.

Accordingly, the trial court did not err in denying the Defendants' motion for summary judgment on Sheffield's claim for false imprisonment. See *Simmons v. Kroger Co.*, 218 Ga. App. 721, 722 (1) (463 SE2d 159) (1995) (because the elements of false imprisonment and false arrest are different, denial of summary judgment on one claim does not preclude grant of summary judgment on the other), overruled on other grounds, *Ferrell*, 295 Ga. App. at 333; *Holmes v. Achor Center, Inc.*, 249 Ga. App. 184, 192 (2) (b) (547 SE2d 332) (2001) (where material issues can be eliminated only by making credibility judgments, movant has not met his burden for summary judgment).

3. The Defendants also assert that the trial court erred in denying their motion for summary judgment on Sheffield's claims for malicious prosecution and punitive damages. We disagree. In order to state a claim for malicious prosecution, the plaintiff must show

> (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff.

*McKissick v. S. O. A., Inc.*, 299 Ga. App. 772, 774 (1) (684 SE2d 24) (2009).

As noted in Division 1, it is undisputed that the criminal proceedings against Sheffield were carried on to prosecution. The record is also clear that the warrants were ultimately dismissed, i.e., the prosecution was terminated in Sheffield's favor. And, as explained in Division 2, there is a genuine issue of material fact as to whether the warrants procured by the Defendants were valid. In addition, the record contains evidence of damage to Sheffield following his 72 days of incarceration, including damage to his reputation and the hiring of an attorney to defend him against the criminal prosecution. See *Lagroon*, 328 Ga. App. at 622 (4) (physical precedent only); *Medoc Corp. v. Keel*, 166 Ga. App. 615, 616 (1) (305 SE2d 134) (1983).

Therefore, we turn to the Defendants' assertion that Sheffield cannot establish the elements of malice and probable cause. The malice required to establish a claim for malicious prosecution "may be inferred from a total lack of probable cause. Thus, the gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution." (Punctuation omitted.) *McKissick*, 299 Ga. App. at 774 (1); OCGA § 51-7-44 ("A total lack of probable cause is a circumstance from which malice may be inferred; however, the inference may be rebutted by proof."). In this context, probable cause is defined as

16

the existence of such facts and circumstances as would excite the belief in a reasonable mind, that the person charged was guilty of the crime for which he was prosecuted. The belief must be supported by appearances known to the defendant at the time he initiates the prosecution, and the appearances must be such as to lead a reasonable man to set the criminal proceeding in motion.

Id. at 774 (1). "[N]o probable cause exists if a defendant knew that the facts stated to the law enforcement official were false or if he failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts." Id. at 775 (1).

Here, the record shows that for more than a year the parties engaged in a course of business in which Covered Wagon provided the trailers to Xtra Tuff on an open account with a 30-day payment term and that Covered Wagon accepted the checks at issue with the agreement to hold them for at least 30 days.[18] Notwithstanding this agreement, there is evidence from which a jury could determine that Futch withheld

---

[18] Although Covered Wagon denies that it was *required* to seek approval prior to depositing a check, it acknowledges that its employees "would frequently provide [Xtra Tuff] with the list of checks to be deposited each week in order to avoid a check being returned for insufficient funds." Covered Wagon also concedes that "[d]uring the normal course of business, if [Xtra Tuff] asked [Covered Wagon] to hold the check longer than thirty days, [Covered Wagon would typically agree to do so with the understanding that payment would be immediately forthcoming."

17

this information from the magistrate judge at the time he procured the warrants, which he signed despite knowing that the checks had not been delivered for "present consideration" and that at least 16 of the checks were less than 30 days old.[19] See *Turnage v. Kasper*, 307 Ga. App. 172, 180 (1) (b) (i) (704 SE2d 842) (2010) ("A person may be held liable for malicious prosecution when he provides information to an investigating officer that he knows to be false, and in doing so unduly influences the authorities to take the complained of actions.") (citation omitted);

---

[19] We note that OCGA § 16-9-20 (h) (1) provides in relevant part that

> in any civil action for damages which may be bought by the person who made, drew, uttered, executed, or delivered such instrument, no evidence of statements or representations as to the status of the instrument involved or of any collateral agreement with reference to the instrument shall be admissible unless such statements, representations, or collateral agreement shall be written simultaneously with or upon the instrument at the time it is delivered by the maker thereof.

However, the Defendants have conceded throughout this litigation that they pursued a course of business with Xtra Tuff in which they provided trailers on a 30-day payment term and agreed to hold each check for 30 days prior to deposit. See *Cartersville Ranch, LLC v. Dellinger*, 295 Ga. 195, 197, n.4 (758 SE2d 781) (2014) (admissions or allegations in pleadings are admissions in judicio and, if not withdrawn, are conclusive of the facts contained therein).

18

*Gooch v. Tudor*, 296 Ga. App. 414, 419 (1) (c) (674 SE2d 331) (2009) (dismissal of the charge is evidence that probable cause was lacking).

Accordingly, the trial court did not err in denying summary judgment on Sheffield's claim for malicious prosecution. See *McKissick*, 299 Ga. App. at 774 (1) (plaintiff able to defeat summary judgment where he submitted evidence that defendant had agreed to a particular business arrangement before later notifying law enforcement that he did not know plaintiff was not a licensed electrician); *Gooch*, 296 Ga. App. at 417 (1) (b) ("Malice may also be found where the plaintiff's arrest is premised on the defendant's knowingly false statement to the police, regardless of the defendant's motive.") (citation omitted); *Nicholl v. A&P*, 238 Ga. App. 30, 32 (1) (517 SE2d 561) (1999) ("Ordinarily, the existence of probable cause is a question of fact for jury determination.") (physical precedent only); *Jones v. Walker*, 167 Ga. App. 286, 287 (306 SE2d 315) (1983) (only where material facts are not in dispute or when only one reasonable inference can be drawn does existence of probable cause become an issue of law for court to resolve).

For this reason, we also affirm the trial court's denial of summary judgment as to Sheffield's claim for punitive damages. See *Gooch*, 296 Ga. App. at 421 (2) (punitive damages available in a malicious prosecution action); *Willis v. Brassell*, 220

Ga. App. 348, 354 (5) (469 SE2d 733) (1996) (recovery for malicious prosecution not confined to actual damages and punitive damages allowed where defendant was influenced by malicious motives and acted without probable cause).

*Judgment affirmed. Senior Appellate Judge Herbert E. Phipps concurs. McFadden, C. J., concurs fully and specially.*

A19A1685. SHEFFIELD v. FUTCH et al.

A19A1686. FUTCH et al. v. SHEFFIELD.

A19A1687. FUTCH et al. v. SHEFFIELD.


MCFADDEN, Chief Judge, concurring specially.

I concur fully in the majority opinion. I write separately to endorse a relevant

admonition in the Magistrate Court Handbook.

We need not decide whether an application hearing providing Sheffield notice and an opportunity to be heard was mandated by OCGA § 17-4-40 or whether the exception to that mandate at OCGA § 17-4-40 (b) (6) (E) obtained. Regardless, such a hearing ought to have been held.

> [I]t is highly improper to allow the criminal process to be used as a method of collecting a debt: The constitution of Georgia provides that "There shall be no imprisonment for debt." The gravamen of the offense chargeable under [the criminal fraud statutes] is the fraud perpetrated, and these sections have for their purpose solely the punishment of fraud, and not the creation of a remedy for the collection of debts or the compelling of the performance of contracts. Accordingly, where the application involves the possibility that it is being used to collect a debt, use of the warrant application process is normally called for[.]

John D. Hadden and Lillian N. Caudle, Ga. Magistrate Court Handbook § 12:2 (2019-2020 ed.), citing *Gooch v. Tudor*, 296 Ga. App. 414, 421 (674 SE2d 331) (2009).