## A11A0063. LEE et al. v. SHIM et al.
### (713 SE2d 906)

ADAMS, Judge.

The purchasers of a sports bar brought suit against the sellers and others, raising breach of contract and other claims in connection with their inability to obtain, in their own name, the proper licenses and permits necessary to run the establishment. The relevant agreements included protection for the purchasers for just such an event. The defendants denied liability, and a bench trial ensued. The trial court held in favor of the purchasers. The defendants now appeal.

The factual findings of a court following a bench trial "shall not be set aside unless clearly erroneous"; in other words, the factual findings will be upheld if there is any evidence to support them. *Gooch v. Tudor*, 296 Ga. App. 414 (674 SE2d 331) (2009). Decisions on questions of law are reviewed de novo. Id. And the evidence shall be construed in favor of the trial court's findings of fact. *Realty Lenders, Inc. v. Levine*, 286 Ga. App. 326, 326-327 (649 SE2d 333) (2007).

So construed, the evidence shows the following: Daniel Lee, the primary defendant, is the son of Ran and Gamillo Lee. As of 2004, both of his parents owned corporations that owned entertainment establishments: Ran Lee owned RLee, Inc., which owned the "Impacto Sport Bar & Grill" located in Jonesboro; and Gamillo Lee owned a corporation named Jonesboro Billiards, Inc., which owned the "Corona Restaurant & Billiards." Daniel Lee ran those businesses for his parents, who can neither read nor write in English, and who knew nothing more about the businesses than that Daniel would ask them to sign documents from time to time. In a finding that has not been appealed, the trial court pierced both corporate veils and held that "Ran Lee, individually, RLee, Inc., Gamillo Lee, individually, and Jonesboro Billiards, Inc. were merely business conduits for their son's fraudulent business behavior."

As a part of creating and operating Impacto in February 2004,

Daniel Lee obtained all the necessary operational permits and licenses, including a dance floor permit, which was required by Clayton County. Only five or so months later in 2004, Daniel Lee orchestrated the sale of Impacto for $1.2 million to S.M.L. Entertainment, Inc., a company solely owned by Sean Sang Lee (no relation). Daniel Lee even testified that Sean Lee "purchased the business from me." Sean Lee, however, could not get a liquor license in his own name, and so, all the business licenses remained in the name of Ran Lee or her company RLee, Inc. for the nine months or so that Sean Lee operated Impacto.

Eventually, plaintiffs Jung Souk Shim and Myung Sook Kim approached Sean Lee and Daniel Lee about purchasing Impacto. On March 15, 2005, Shim and Kim entered into a "Purchase and Sale Agreement" in which they agreed to purchase the bar for $1.2 million, the same price Sean Lee had agreed to pay. On April 12, 2005, Shim and Kim's corporation — Eiffel, Inc. — (together, the purchasers) purchased the sports bar for $700,000 paid on or before that day, plus $500,000 to be paid at a later time. Shim and Kim were concerned about their ability to obtain the licenses and permits necessary to operate the business, and they desired protection from the sellers for that contingency. Accordingly, the transaction was documented in several related agreements that reflect that the sellers induced the purchasers to close without licenses but with the defendants' guarantee to return all sale proceeds in the event the purchasers could not obtain them.

First, "Special Stipulation (c)" of the "Memorandum of Sale" dated April 12, 2005, provides that S.M.L. Entertainment would refund to Eiffel all of its payments, and the sale would be declared void, if Eiffel was unable to obtain all necessary licenses and permits:

> The Closing is contingent upon Purchaser obtaining all licenses and permits necessary to operate the business, including without limitation, business license and alcohol license, from the appropriate City, County, and/or State of Georgia. In the event Purchaser is unable to obtain said licenses or permits without its faults including DUI and criminal records, all payments shall be returned to Purchaser, and this Agreement shall be null and void, and Seller and Purchaser shall have no further claims against each other.

That repayment provision was backed up by three tiers of guarantees executed by two individuals and three corporations. In a separate April 12, 2005 agreement, Daniel Lee, Danvi Enterprises, Inc. (Daniel Lee's corporation), Sean Sang Lee, S.M.L. Entertain-

ment, Inc., and Jonesboro Billiards, Inc. first acknowledged that they "induced [Eiffel] to consummate the sale of the Business with contingency of [Eiffel] obtaining business and alcohol licenses *after the closing* (hereinafter referred to as 'Licenses')." (Emphasis supplied.) Accordingly, they agreed "to guarantee to reimburse to [Eiffel] the sale proceeds in the event [Eiffel] fails to obtain the Licenses after the closing." The specifics of the guarantee show that Danvi and S.M.L. first promised to return the sale proceeds "within ten (10) days after [Eiffel's] notice of its failure to obtain the Licenses." Daniel Lee and Sean Sang Lee then personally guaranteed Danvi and S.M.L.'s performance:

> Daniel Lee and Sean Sang Lee personally guarantee to [Eiffel] the reimbursement of the Sale Proceeds including note payments of Danvi Enterprises, Inc. and S.M.L. Entertainment, Inc. Both agree to reimburse the Sale Proceeds including note payments in the event that Danvi Enterprises, Inc. and S.M.L. Entertainment, Inc. fail to reimburse the Sale Proceeds to Purchaser.

In a third layer of protection, Jonesboro Billiards, Inc. (Daniel Lee's father's company) backed up both of those guarantees with the promise to give Eiffel the other bar — the Corona — in the event the first four guarantors did not perform:

> Jonesboro Billiards, Inc. agrees to transfer to Purchaser at no additional cost to Purchaser the business known as "Corona Restaurant & Billiards" . . . in the event that Danvi Enterprises, Inc., S.M.L. Entertainment, Inc., Daniel Lee and Sean Sang Lee fail to reimburse to Purchaser the Sale Proceeds including note payments.

Finally, in another April 12, 2005 agreement, Daniel Lee agreed to work as a consultant for Eiffel and agreed "to cooperate with [Eiffel] to obtain such licenses and permits and agrees to execute such reasonable documentation, as may be necessary for [Eiffel] to obtain such licenses and permits."

From that day forward, Daniel Lee knew that Shim, Kim, and Eiffel were attempting to get licenses and permits in their own name but that they never succeeded.

First and foremost, the alcohol license and dance floor permit remained in RLee's name the entire time of the events relevant to this lawsuit; in fact, Daniel Lee continued to renew them in RLee, Inc.'s name after Eiffel's purchase. In addition, Lee admits he knew in April 2005 that the purchasers could not even get a business

license until the landlord of the premises agreed to an assignment of the lease from RLee, Inc. to Eiffel, Inc. This assignment was not obtained until July 1, 2005.

Then, later in July, Shim and Kim hired lawyer Thomas Choi to help with liquor licensing. Thereafter, Choi learned that, in addition to other licenses, the purchasers needed a dance floor permit from Clayton County, and he recommended obtaining a lawyer from that county. Daniel Lee admitted that in August 2005, he was aware of these events; he learned from Choi's firm that the purchasers were having trouble getting necessary licenses. Kim also told Lee at that time that they could not get licenses. Daniel Lee attempted to assist by referring the purchasers to a Clayton County attorney named Steven Frey. Kim and Shim paid Frey $28,000 in fees for him to help them obtain the necessary licenses, and it was Frey who first informed Kim that a dance floor permit was required. Kim testified that Frey applied for the necessary licenses but that the applications were unsuccessful. During this period, Kim told Daniel Lee two or three times a month that they could not obtain the necessary licenses.

On September 16, 2005, Kim and Shim formally notified Sean Sang Lee and S.M.L. Entertainment, Inc., in writing, that the permits necessary to operate the business could not be obtained. They invoked Special Stipulation (c) of the Memorandum of Sale and demanded the return of all sale proceeds and the cancellation of all obligations between the parties. They received no response.

Nevertheless, Kim and Shim continued to attempt to obtain licensure. In November 2005, they hired another attorney, Keith Martin, to obtain a business license, a liquor license, and a dance floor permit. Based on that lawyer's investigation of the facts, he determined that the purchasers would not be able to obtain a dance floor permit at all, which was essential to the business. He advised Kim and Shim that the only way to continue operating would be to transfer a small portion of Eiffel stock to RLee, Inc., which still held all licenses and permits, so that RLee's permits could be used for the time being. Accordingly, as Daniel Lee was well aware, the parties entered into an additional agreement in January 2006 to do exactly that. Indeed, Daniel Lee admitted that the January 2006 transaction was necessary so that the purchasers could continue to operate using RLee's business license, liquor license, and dance floor permit.

The January 2006 transaction included an obligation on the purchasers that they again attempt to obtain the necessary licensing in their own name. If that could be accomplished, the January transaction would essentially be undone. Immediately thereafter, Kim and Shim, with Martin's assistance, took steps to obtain the licenses in their own names. Nevertheless, the purchasers were

never able to obtain the necessary licensing; and in November 2006, they received a denial of their application for a retail alcohol consumption license indicating that the application was denied because a dance floor was not permitted. At that point, the purchasers ceased operating the business. The space is now a Japanese restaurant.

Kim and Shim reiterated their demands on Sean Lee and Daniel Lee for the return of their money pursuant to the original agreements, but the defendants never complied by returning the $700,000 or giving them the other bar.

The purchasers filed suit and raised claims of breach of contract, fraud and misrepresentation, punitive damages, and unjust enrichment. Sean Sang Lee and S.M.L. Entertainment, Inc. apparently failed to answer the complaint. Following a bench trial involving the remaining defendants, the trial court entered a written "Verdict and Judgment" in favor of the purchasers on all claims.[1] The appellants raise five enumerations of error.

1. The appellants' first enumeration of error concerns the purchasers' claim of breach of contract:

> The trial Court erred in finding that Defendants breached the April 12, 2005 Memorandum of Sale contract based upon a finding that the Appellees, by September 2005, were unable to obtain a liquor license necessary for the operation of the business, that the Plaintiffs notified Appellants of their inability to obtain the necessary license and that Appellants were in breach of the Memorandum of Sale when they declined to pay back $700,000 which Appellees had paid toward the purchase of the Impacto.

This enumeration does not accurately reflect the trial court's order. The trial court actually held that Danvi, Daniel Lee, Gamillo Lee, and Jonesboro Billiards breached the April 12, 2005 guarantee agreement, not the Memorandum of Sale.[2] The trial court's finding is supported by the wording of that agreement and the evidence presented at trial. In the guarantee, Danvi and S.M.L. first promised to return the sale proceeds "within ten (10) days after [Eiffel's] notice of its failure to obtain the Licenses." The guarantee does not require a written notice. The evidence shows that the purchasers

---

[1] The remaining defendants/appellants are Daniel Lee, Danvi Enterprises, Inc., RLee, Inc., Ran Lee, Jonesboro Billiards, and Gamillo Lee.

[2] The court also found that Ran Lee and RLee, Inc. breached the January 2006 agreement. The appellants do not argue at all regarding the court's finding of breach of this agreement, therefore any possible argument is abandoned. See Court of Appeals Rule 25 (c) (2).

notified S.M.L. in writing on September 16, 2005 that they were unable to obtain the licenses; that they told Daniel Lee, hence Danvi, the same information two or three times a month; and that neither entity ever complied. The failure of S.M.L. and Danvi to honor the guarantee triggered the personal guarantees of Sean Lee and Daniel Lee under the plain wording of the same agreement. And, in turn, their failure triggered the obligation of Jonesboro Billiards, Inc. to transfer the Corona to the purchasers.

The appellants argue that "there is no evidence to support a finding that the Appellees undertook any effort whatsoever between April 12, 2005 and September 25, 2005 . . . to properly apply for a dance floor and/or liquor license for which they were rejected." First, however, there was evidence that the purchasers expended effort during that time and that they were not able to obtain licenses: they had hired two different lawyers by September 25, 2005 to assist them with that process and had spent at least $28,000 in legal fees in an unsuccessful effort; and Kim testified that he applied for licenses in September 2005 and did not get any. Daniel Lee, the only witness for the defendants, admitted he knew nothing about the purchasers' efforts to obtain licensing, and therefore no rebuttal was offered to the purchasers' evidence.

Second, after that time, the evidence shows that the purchasers mounted two more efforts to obtain the licenses, and the trial court's decision was not based solely on the purchasers' inability to obtain licenses by September 25, 2005; none of the agreements set a deadline. The purchasers hired Keith Martin, who spoke with several county officials about the licensing issues and determined that a dance permit could not be obtained, in part because the county no longer allowed dance floors in establishments that served alcohol. Martin also helped the parties mitigate the problem by helping to arrange the January 2006 transaction, whereby the purchasers gave a portion of ownership back to RLee, Inc. so that they could continue to operate under RLee's existing licenses. And the purchasers made a renewed attempt immediately afterward, which again proved unsuccessful. This evidence supports the trial court's true finding that "the permits were never able to be obtained." Cf. *Wallick v. Period Homes, Ltd.*, 252 Ga. App. 197, 202 (2) (555 SE2d 863) (2001) (question of whether party made "genuine good faith efforts to meet the governmental approval contingency in the contract is a question of fact for the jury to resolve at trial."); *Reid v. Fain*, 134 Ga. 508 (68 SE 97) (1910) ("The contractual obligation of the tenant to secure a retail liquor license implies a reasonable effort in good faith to get such a license.").

The appellants also argue that the contingency in the agreements regarding obtaining licenses was too vague to be enforced and

that therefore the agreements should be void. " '[I]ndefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void.' [Cits.]" *Kueffer Crane & Hoist Svc. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000). But "where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith." (Citation, punctuation and emphasis omitted.) *Hunting Aircraft v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 452 (1) (636 SE2d 139) (2006). And "[w]hat constitutes good faith is a question for the finder of fact." Id. Here, the purchasers were required to use a good faith effort to obtain the licenses within a reasonable time. Thus, we do not find that the agreements were indefinite to such an extreme so as to render them void.

In addition, we fail to see how the appellants benefit from this argument. A finding that the contract is void is essentially the same remedy being enforced under the contingency clause of the Memorandum of Sale:

> In the event Purchaser is unable to obtain said licenses or permits without its faults including DUI and criminal records, all payments shall be returned to Purchaser, and this Agreement shall be null and void, and Seller and Purchaser shall have no further claims against each other.

Finally, the appellants contend the contingency clause was not triggered because the purchasers in fact operated Impacto for 20 months under RLee's license, therefore they in fact obtained the necessary licenses to run the Impacto. But this argument is disingenuous. RLee already had licenses, and the clear intent of the agreements was to provide a contingency for the possibility that the purchasers could not obtain the licenses on their own behalf.

2. The appellants contend the trial court made several errors with regard to the claim of fraud and misrepresentation. They first contend the court erred by finding that in April 2005 the sellers were under a duty to disclose that the purchasers would be unable to obtain a dance floor permit and/or a liquor license; they add that there is no evidence that the sellers were aware of that problem at the time of the sale.

We agree that there is no evidence to support this factual finding. Although there is evidence showing that Daniel Lee knew that Impacto needed a dance floor permit, there is no evidence he was aware in April 2005 that an ordinance had been passed prohibiting dance floors in establishments that sold alcohol, as was claimed by the appellees. The only evidence cited by the appellees in support

is the testimony of Thomas Choi and Keith Martin, who were not involved in the transaction in April 2005 and only came to be involved, respectively, in July and November of that year. Although Martin held the opinion that RLee, Inc. should never have been issued a dance floor permit, that testimony was based on hearsay, and, moreover, it does not establish that the sellers illegally obtained a permit or that they knew that they should not have received one in 2004. The alleged ordinance itself was never introduced into evidence or even quoted in the record. " '(I)t is well established . . . that judicial notice can not be taken by the superior court or this court of city or county ordinances, but they must be alleged and proved.' [Cits.]" *Childers v. Richmond County*, 266 Ga. 276, 277 (467 SE2d 176) (1996) ("trial court erred in ordering appellants to comply with the terms of an ordinance not properly before the court"); see also *Thorsen v. Saber*, 288 Ga. 18, 19 (1) (701 SE2d 133) (2010). Our own review of the record shows no other evidence suggesting that Daniel Lee or any of the appellants knew in April 2005 that the purchasers would not be able to obtain a dance floor permit. This holding also addresses the trial court's finding that Daniel Lee misrepresented that he was in compliance with all city and county ordinances at the time of the sale.

The court made several other findings in support of its award for fraud against the appellants. The appellants contend the court erred by finding that Daniel Lee agreed to pledge the Corona as a part of the guarantee given that he never intended to transfer the Corona. The court actually found that Lee sold the Corona in violation of the January 2006 agreement after he knew the purchasers could not obtain the required dance floor permit and after the purchasers had made numerous demands for the return of their money and tendered back the Impacto. The January 2006 agreement included a provision stating that Eiffel possessed a lien against the Corona as evidenced by a UCC-1 filing and that Eiffel could foreclose on that lien in the event of a breach of the agreement by RLee, Inc. And Daniel Lee essentially admitted that he sold it knowing that it had been pledged as collateral. Thus there was some evidence to support this finding of the court. The appellants also contend the court erred by finding that Daniel Lee failed to disclose in April 2005 that the purchasers would need a dance floor permit. But Kim testified to that fact.

With regard to the fraud claim as a whole, our holding that there is no evidence to support the finding that the sellers knew at the time of the sale that the purchasers would not be able to obtain a dance floor permit undermines part of the claim, including the point raised in the appellants' third enumeration of error. But the court made other factual findings to support its finding of fraud. And, although the purchasers "could not recover for both breach of contract and

fraud if the fraud related purely to the inducement to enter into the contract," damages that arise from "[a different fraud] would not be duplicative of those for breach of contract." *Long v. Marion*, 182 Ga. App. 361, 366 (5) (355 SE2d 711) (1987) (physical precedent only), aff'd, 257 Ga. 431 (360 SE2d 255) (1987). We therefore vacate that finding and remand for the court to reconsider the issue and modify the judgment consistent with this opinion.

3. The trial court found that Daniel Lee's parents, RLee, Inc. and Jonesboro Billiards were unjustly enriched because they benefitted unjustly by receiving $514,899.34 of the purchase funds from the purchasers. In their fourth enumeration of error, the appellants contend the trial court erred by entering awards of both breach of contract and unjust enrichment because the claims are mutually exclusive. In their fifth enumeration, they contend the trial court — a state court — lacked jurisdiction to give an award based on the equitable theory of unjust enrichment.

(a) First, the jurisdiction question. State courts have jurisdiction over civil trials, "except those actions in which exclusive jurisdiction is vested in the superior courts." OCGA § 15-7-4 (a) (2). "All equity jurisdiction shall be vested in the superior courts. . . ." OCGA § 23-1-1. Here, the purchasers raised claims of money had and received and unjust enrichment, but in both claims they sought only damages, not equitable relief. Because the complaint contained neither allegations of nor prayers for equitable relief, the state court was not without jurisdiction. *Stone Mountain Pool Supply Co. v. Imperial Pool Co.*, 170 Ga. App. 283 (1) (316 SE2d 769) (1984); and see *Multi-Media Holdings v. Piedmont Center, 15 LLC*, 262 Ga. App. 283, 287 (3) (583 SE2d 262) (2003) (re: claim of piercing the corporate veil). See generally *Regal Textile Co. v. Feil*, 189 Ga. 581, 584-585 (6 SE2d 908) (1940) (with regard to superior court jurisdiction, "the question whether it is a suit in equity is determined by the allegations and prayers"; "an ordinary cause of action for money had and received, or for money paid by mistake or (as it is now often called) for unjust enrichment, is one now cognizable at law . . ."); *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997) ("The theory of recovery for unjust enrichment arises both at law and equity. [Cits.]"). We find no error in the state court's jurisdiction.

(b) Next, the appellants claim that the court erred by awarding damages for both breach of contract and unjust enrichment because the claims are mutually exclusive. They argue that "the theory of unjust enrichment applies when as a matter of fact, there is no legal contract," and that the purchaser's claims were based on a contract.

First, the court awarded unjust enrichment damages against Daniel Lee's parents (Ran Lee and Gamillo Lee) and their corporate entities (RLee, Inc. and Jonesboro Billiards, Inc). The court assessed

damages for breach of the April 2005 Agreement against two of these same defendants — Gamillo Lee and Jonesboro Billiards.[3] The appellees essentially concede that they are not entitled to two recoveries against these latter two defendants: they state that "the liability of those two appellants under the theory of unjust enrichment is subsumed by their liability for a greater amount under breach of contract theories."

We agree because plaintiffs are barred from a double recovery of damages. See *Georgia Northeastern R. R. v. Lusk*, 277 Ga. 245, 246 (587 SE2d 643) (2003); see also *Woodhull Corp. v. Saibaba Corp.*, 234 Ga. App. 707, 711-713 (2) (507 SE2d 493) (1998) (party "not permitted a double recovery of the same damages for the same wrong"). A plaintiff who has been successful on alternate contractual and tort remedies is required to elect its remedy. *Marvin Nix Dev. Co. v. United Community Bank*, 302 Ga. App. 566, 568 (692 SE2d 23) (2010).

Normally, the next step would be to vacate the breach of contract and unjust enrichment judgments against Gamillo Lee and Jonesboro Billiards and remand to require that the purchasers elect between the contractual and tort remedy. Id. But, we first address the ramifications of our holding in Division 2 on all claims of unjust enrichment against the defendants held liable on that claim.

In Division 2, we held that there is no admissible evidence suggesting that the appellants knew in April 2005 that the purchasers would not be able to obtain a dance floor permit, undermining some part of the purchasers' fraud claim. Their unjust enrichment claim appears to be inextricably intertwined. In that claim, the purchasers contend that Daniel Lee's parents and their corporate shells were unjustly enriched when a portion of the April 2005 purchase money paid to S.M.L. Entertainment (Sean Sang Lee's company) was used to pay S.M.L.'s debts to RLee, Inc arising out of the earlier sale of the Impacto to S.M.L. Unjust enrichment has been described as follows:

> The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of

---

[3] The court found that Ran Lee and RLee, Inc. breached the January 2006 contract. But that contract was separate in time from the payments that Ran Lee and RLee, Inc. allegedly received unjustly in April 2005.

another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred.

*Reidling*, 225 Ga. App. at 232. This Court cannot determine the degree to which the trial court's award for unjust enrichment was premised on the erroneous factual finding that Daniel Lee knew in April 2005 that the purchasers could not get the permit. We therefore vacate the entire award of unjust enrichment and remand to reconsider the issue and modify the judgment consistent with this opinion.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JULY 12, 2011.

*David C. Ates*, for appellants.
*Kevin T. Moore*, for appellees.