**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

January 30, 2026

# In the Court of Appeals of Georgia

A25A1974. TONEY et al v. MCKEE et al.

DILLARD, Presiding Judge.

Dr. Quodarrius Toney and Art of Aesthetics Dental Studio LLC appeal from the trial court's entry of judgment for Jahylin McKee and J. McKee and Co. LLC[1] after Toney failed to appear at the trial of his claims and McKee's counterclaims. Toney argues the trial court erred in (1) failing to grant a continuance or rehearing; (2) striking his pleadings; and (3) awarding a variety of damages to McKee. For the following reasons, we affirm the judgment in part, vacate the judgment in part, and remand for further proceedings consistent with this opinion.

---

[1] For the sake of clarity, we refer to Dr. Quodarrius Toney and Art of Aesthetics Dental Studio LLC collectively as "Toney" and Jahylin McKee and J. McKee and Co. LLC collectively as "McKee" throughout the opinion.

This is a breach of contract case. Toney operates a cosmetic dental practice, and he contracted with McKee to provide public-relations services. More precisely, in June 2023, the parties entered into a services agreement by which McKee would "find, procure and secure monetary deals" for Toney's practice. And soon after, McKee introduced Toney to Water Pik, Inc.—a company that makes and sells oral-health products. She then developed a project proposal for Toney to enter into an agreement and complete a college tour with Water Pik.[2] But in August 2023, Toney advised McKee that he would not be renewing their contract after it expired in September.

*Immediately* after the expiration of the public-relations-services contract between Toney and McKee, Toney entered into an agreement with Water Pik. And given the timing of this deal, McKee believed it happened as a direct result of her efforts on Toney's behalf. So, McKee sent a demand letter to Toney, seeking a commission on the deal under the services agreement. But on December 20, 2023, Toney filed a breach-of-contract action against McKee; and for reasons that are not

---

[2] This college tour included several prestigious HBCU institutions—like Morehouse College and Spelman College—and "would feature engaging pop-up activations and demonstrations highlighting proper flossing techniques."

apparent, this complaint is not included in the appellate record. Even so, it appears that—in addition to a claim for breach of contract—Toney alleged conversion, money had and received, and breach of fiduciary duty.[3]

McKee answered the complaint and made counterclaims against Toney, alleging breach of contract, unjust enrichment, abusive litigation, and unclean hands; and she also requested an award of attorney fees. As to the breach-of-contract claim, McKee argued that Toney breached the public-relations-services agreement by failing to pay for services—*i.e.*, to pay a five-percent commission—that led him to securing a deal with Water Pik. Regarding the unjust-enrichment claim, McKee contended that Toney was unjustly enriched by entering into the agreement with Water Pik when he benefitted from (but did not pay for) her labor and work product that led to this arrangement. And as to the abusive-litigation claim, McKee maintained that Toney filed suit against her "with no substantial justification" and "acted with malice by filing a frivolous lawsuit based on false accusations of breach of [f]iduciary duty and

---

[3] Neither party has moved to supplement the appellate record, and Toney had the burden of ensuring all requested portions of the record were transmitted. See *Metro. Atlanta Rapid Transit Auth. v. Harrison*, 371 Ga. App. 808, 809(2) (903 SE2d 287) (2024) (noting that "[i]t is the burden of the appealing party to ensure that a complete record is transmitted to this Court on appeal" (brackets and quotation marks omitted)).

illegal conversion only after" she sent her demand letter. She also claimed that Toney acted with "unclean hands" by eliminating her from the Water Pik deal. Finally, McKee requested an award of attorney fees under both OCGA § 13-6-11 and OCGA § 9-15-14(a).

The case was scheduled for a virtual trial (via Zoom) on February 24, 2025, but Toney failed to appear despite having been sent numerous links for it. And as a result, the trial court struck his pleadings and granted judgment for McKee. As part of that judgment, the court awarded the following damages:

Unpaid Contract Commission (5% of Water Pik deal)[:] $6,650.00

Contract Production fee[:] $15,000.00

Contract Commission from . . . repeat deals[:] $6,650.00

Consequential Damages (Lost Business Opportunities)[:] $48,000.00

Unjust Enrichment (Value of Work Performed)[:] $83,000.00

Attorney's Fees[:] $26,077.55

Court & Filing Costs[:] $25.72

TOTAL: $185,403.27

Nearly one month later (on March 18, 2025), Toney filed an "emergency motion for rehearing due to technical difficulties outside the control of the plaintiff (OCGA § 9-10-154[4])" and a "motion for reconsideration and to set aside judgment (for internal legal error on the face of the judgment)." Specifically, Toney's attorney claimed that he failed to appear at the hearing because of the misconfiguration of a remote email server, which resulted in him never receiving any of the links he requested for the virtual trial. In these motions, counsel described the many emails he sent and the unanswered phone calls he made both before and during the trial in an attempt to attain the necessary link or learn if the trial had been rescheduled. And in the days that followed, counsel eventually learned that his business email address was not receiving incoming messages, he diagnosed the problem, and then belatedly received all of the sent (and now expired) links to the trial. But before the trial court

---

[4] OCGA § 9-10-154 provides that "[i]f either party is providentially prevented from attending the trial of a case, and the counsel of the absent party will state in his place that he cannot go safely to trial without the presence of the absent party, the case shall be continued, provided the continuances of the party have not been exhausted."

could rule on either motion, Toney filed a notice of appeal from its final order on March 28, 2025. This appeal follows.

1. First, Toney argues the trial court erred in failing to grant a continuance for providential cause.[5] But a motion for continuance was not filed until nearly one month *after* the trial occurred, and the court could not continue a trial that was already complete.[6] This enumeration, then, lacks merit.

2. Next, Toney contends the trial court erred in striking his pleadings. But in doing so, he provides no argument as to why this was an abuse of discretion by the trial court—which is the standard we apply when reviewing the grant of a motion to strike.[7]

---

[5] Toney also claims the trial court should have granted a rehearing, but he provides no argument on this alternative ground. Moreover, although Toney filed a motion for reconsideration and to set aside the judgment, the court lost jurisdiction to consider it after he filed a notice of appeal. As a result, the court did not issue (and was unable to issue) an order on that motion. See, e.g., *Rollins v. Rollins*, 300 Ga. 485, 488(1) (796 SE2d 721) (2017) (noting that the notice of appeal "acted as supersedeas and deprived the trial court of the power to affect the judgment appealed" (punctuation omitted)).

[6] See *Barton v. Barton*, 216 Ga. App. 292, 292(2) (454 SE2d 155) (1995) ("We also note that a subsequent motion for continuance due to medical reasons by both of the defendants is also meritless. This later motion was not filed until after the date of the trial sought to be continued.").

[7] See, e.g., *Cameron v. Miles*, 311 Ga. App. 753, 754 (716 SE2d 831) (2011) (noting that rulings on a motion to strike and for entry of default judgment are

Instead, Toney provides three conclusory sentences as to the severity of striking pleadings in general. And by failing to apply the law to the facts of this case, he abandoned any argument that the trial court abused its discretion.[8] Moreover, and significantly, Toney elected *not* to file a transcript of the virtual proceedings below; and as we have explained, when an appellant fails to include a transcript in such circumstances, he fails to establish error.[9]

---

"reviewed by this Court using an abuse of discretion standard."). Indeed, given what the trial court knew at the time—*i.e.*, that Toney was notified of the trial date and time but failed to appear—its decision was perfectly reasonable and well within its discretion. See, e.g., *Pennington v. Pennington*, 291 Ga. 165, 166(1) (728 SE2d 230) (2012) (noting that a trial court may strike a party's pleadings "as a proper sanction for wilful refusal to participate in the proceedings pursuant to a court's inherent power to efficiently administer the cases upon its docket, as well as its power to compel obedience to its orders and control the conduct of everyone connected with a judicial proceeding before that court").

[8] See, e.g., *McDaniel v. State*, 367 Ga. App. 376, 379–80(f) (885 SE2d 245) (2023) (concluding that error was abandoned when appellant "fail[ed] to cite any legal authority, beyond the applicable statutes, or to engage in any reasoned argument that would establish reversible error").

[9] See *Williams v. Medinger*, 349 Ga. App. 807, 808(1) (824 SE2d 800) (2019) (explaining that "when a trial court grants a plaintiff's motion in open court to strike a non-appearing defendant's pleadings, and [when] the defendant has submitted no transcript of the hearing, the defendant has failed to show legal error, and the judgment by default must be affirmed" (quotation marks omitted)); *Collier v. Am. Exp. Centurion Bank*, 306 Ga. App. 376, 377(2) (702 SE2d 640) (2010) (same).

3. Toney also challenges the trial court's award of damages on several grounds. But again, he elected *not* to include a transcript of the virtual trial with the appellate record; and so, we will assume the evidence "authorized the damages awarded if the complaint properly alleged the basis for the recovery of such damages."[10] Indeed, a judgment by default properly entered against parties "sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration."[11] Even so, conclusions of law, facts not well-pleaded, and forced

---

[10] *Hulsey Pool Co., Inc. v. Troutman*, 167 Ga. App. 192, 193(2) (306 SE2d 83) (1983) (physical precedent only). See *Broad. Concepts, Inc. v. Optimus Fin. Servs., LLC*, 274 Ga. App. 632, 634(1) (618 SE2d 612) (2005) (noting that "[w]ithout a transcript, the appellate court must presume that the trial court's findings of fact are supported by evidence" (quotation marks omitted)).

[11] *Stroud v. Elias*, 247 Ga. 191, 193 (275 SE2d 46) (1981) (Per Curiam) (quotation marks omitted). See *Chironsoft Co., Ltd. v. Yokim Mktg., LLC*, 374 Ga. App. 603, 612(4) (912 SE2d 69) (2025) (noting that a defendant in default is "in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged," and that default "concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery" (quotation marks omitted)).

inferences are "not admitted by a default judgment."[12] With these guiding principles in mind, we turn now to Toney's arguments about the awarded damages.

a. *Unjust Enrichment.* Toney argues the award for unjust enrichment cannot stand because the parties had a valid and binding contract. We agree.

Under the admitted allegations in the counterclaims, Toney entered into the agreement with Water Pik after benefitting from McKee's labor and work product. But importantly, unjust enrichment is an equitable doctrine which only applies when, as a matter of fact, there is "no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for."[13] Here, because McKee

---

[12] *Stroud*, 247 Ga. at 193 (quotation marks omitted). See *Fink v. Dodd*, 286 Ga. App. 363, 365(1) (649 SE2d 359) (2007) ("It is axiomatic that a default does not result in the admission of allegations that are not well-pled or that are the result of forced inferences." (quotation marks omitted)).

[13] *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137(1) (508 SE2d 646) (1998) (quotation marks and ellipses omitted). See *Tuvim v. United Jewish Communities, Inc.*, 285 Ga. 632, 635(2) (680 SE2d 827) (2009) ("Unjust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." (quotation marks omitted)). See also *The Intellectual History of Unjust Enrichment*, 133 Harv. L. Rev. 2077, 2081 (2020) (explaining that "[u]njust enrichment was a creature of both common law and equity; both traditions recognized sources of legal obligation outside

agrees there was a binding contract—and entered that contract into evidence (which was filed as an exhibit with the court's final order)—she cannot recover for unjust enrichment.[14] This aspect of the trial court's judgment, then, must be vacated.

b. *Damages Under Hourly Fee*. Toney also contends the trial court erred in awarding damages to McKee under an hourly fee arrangement when the contract between the parties was for a commission structure. But because the court awarded an hourly fee as the basis for its unjust-enrichment calculation, we need not address this argument when we have already vacated that award. Even so, to avoid any confusion, we reiterate that the hourly fee award is vacated.

c. *Lost Profits or Lost Business Opportunities*. Toney next claims the trial court erred in awarding damages for lost profits or lost business opportunities when there was a contract between the parties and McKee did not plead consequential or special damages. Again, we agree.

---

the sphere of contract and tort").

[14] See *Lee v. Shim*, 310 Ga. App. 725, 734(3)(b) (713 SE2d 906) (2011) (explaining that party could not recover damages under both a binding contract and a theory of unjust enrichment because "plaintiffs are barred from a double recovery of damages").

Under OCGA § 13-6-2, damages recoverable for a breach of contract are "such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." And under OCGA § 13-6-8, remote or consequential damages are "not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract."

Here, McKee requested damages for breach of contract under OCGA § 13-6-2 and OCGA § 13-6-8, and the trial court awarded "consequential damages" for "lost business opportunities" in the amount of $48,000. But lost profits or business opportunities are *special* damages;[15] and under the Civil Practice Act, such damages

---

[15] See *SMD, L.L.P. v. City of Roswell*, 252 Ga. App. 438, 441(2) (555 SE2d 813) (2001) (describing "lost profits" and "lost investment" as "consequential or special damages" and also noting that "[a]s a general rule, expected profits of commercial business are too uncertain, speculative, and remote, to permit recovery for their loss"), abrogation on other grounds recognized by *Schumacher v. City of Roswell*, 344 Ga. App. 135 (809 SE2d 262) (2017); *Imaging Sys. Int'l, Inc. v. Magnetic Resonance Plus, Inc.*, 227 Ga. App. 641, 645(1) (490 SE2d 124) (1997) (noting that even though the statutory definitions of general and special damages refer to "tortious acts," general and special damages "also may be recovered in contract actions if the general and special damages are not remote or consequential and are such as arise naturally

11

must be "specifically stated."[16] This, McKee did not do. More precisely, she did not include any factual allegations in her counterclaims—*i.e.*, any mention of "lost profits" or "lost business opportunities"—to support a request for special damages. So, because McKee provided no basis for claiming special damages, she may not be awarded such damages—even though Toney defaulted as to liability on the breach-of-contract claim.[17] This portion of the award, then, is likewise vacated.

---

and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach" (quotation marks, brackets, and citations omitted)); *Globe Motors, Inc. v. Noonan*, 106 Ga. App. 486, 486(1) (127 S2d 320) (1962) (noting that loss of earnings in the form of profits "can be recovered only if the loss is free from uncertainty and speculation," and so, "in pleading this item of special damages sufficient facts should be alleged to show definitely that the claimed loss of profits would have occurred but for the injury" (citation omitted)).

[16] OCGA § 9-11-9(g).

[17] See *Copeland v. Carpenter*, 203 Ga. 18, 20(3) (45 SE2d 197) (1947) (noting that the plaintiff "could recover only such special damages as he actually sustained as a consequence of the alleged wrongful acts, and he was required to plead them plainly, fully, and distinctly"); *Tri-County Inv. Grp., Ltd. v. S. States, Inc.*, 231 Ga. App. 632, 638(4)(a) (500 SE2d 22) (1998) (holding that party cannot recover special damages when it "failed to specifically state what special damages it sought in the complaint"); *Kennedy v. Johnson*, 205 Ga. App. 220, 222(1) (421 SE2d 746) (1992) (explaining that "[h]aving pled no special damages, [appellant] has failed to establish that he is entitled to proceed against [appellee] under the authority" that would permit recovery of special damages). Cf. *Bryant v. Haynie*, 216 Ga. App. 430, 432(3) (454 SE2d 533) (1995) (holding that trial court did not err in denying motion in limine to exclude

12

d. *Contract Production & Repeat Deals*. Toney also maintains the trial court erred by awarding McKee damages for "contract production" and "repeat deals" when the agreement contained a merger clause and the plain language of the contract did not include compensation for those items. Once again, we agree.

Under the contract (which, again, was filed as an exhibit with the trial court's final order), there was no mention of a "contract production" fee or "repeat deals." The public-relations-services agreement was effective from June 5, 2023, until September 5, 2023, and automatically renewed if neither party terminated the contract (which Toney did). So, under that agreement, Toney was to pay a retainer fee of $5,400; any out-of-pocket expenses; and a commission of five percent if McKee "manage[d] to broker a deal where money was exchanged" after continuing to work on "the WaterPik deal." Again, the contract did not mention a fee for "contract

---

evidence of special damages following defendant's default as to liability in action for personal injury when "[t]he record shows that the complaint alleged that [plaintiff] had incurred 'far more than $200,000' in medical expenses, and in the pretrial order [plaintiff] asserted medical expenses in excess of $265,000").

production" or "repeat deals," and so McKee is not entitled to such damages under a breach of the contract.[18] This portion of the trial court's award, then, is also vacated.

e. *Commission Calculation.* Toney also argues the trial court erred in calculating the commission due to McKee at $6,650 when, under the agreement, it was $4,850. And while we disagree with Toney's calculation, we do agree the court awarded an improper amount.

Included as an exhibit filed with the trial court's final order is a copy of the agreement between Toney and Water Pik. The terms of the contract provided that Toney was to be compensated $60,000 for a college tour; $15,000 as an "event organization/production" fee; "reasonable travel expenses" (to be pre-approved); and a $25,000 donation to a scholarship fund. In total, this amounts to $100,000.[19] And five percent of $100,000 is $5,000, which is more than the $4,850 that Toney claims is owed in commission but less than the $6,650 awarded by the trial court.

---

[18] See OCGA § 13-6-2 (providing that "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach").

[19] Toney's brief inexplicably calculates the total as $97,000 despite using these same numbers.

Thus, the award of $6,650 for commission under the agreement must be vacated and the trial court is to enter an award of $5,000 on remand.

f. *Attorney Fees*. Finally, Toney contends that McKee is not entitled to attorney fees when all of her substantive claims fail as a matter of law; but this is not true,[20] so we affirm the trial court's award in this regard.

In light of the foregoing, we affirm the entry of default judgment and striking of Toney's pleadings; we affirm the grant of attorney fees; we vacate the trial court's award of damages on all other grounds; and we remand for the court to award the proper amount of commission as damages. The judgment, then, is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded for further proceedings. Mercier, J., and Senior Judge C. Andrew Fuller, concur.*

---

[20] This is the *only* basis of Toney's challenge to the grant of the attorney-fees award. As a result, we do not consider whether the trial court otherwise erred in its grant of these fees. It is not our job to cull the record on behalf of Toney to "find alleged errors, as appellate judges are not like pigs, hunting for truffles buried in briefs." *McDaniel*, 367 Ga. App. at 379(d) (punctuation omitted).