**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 12, 2015**

# In the Court of Appeals of Georgia

A15A0229. DIXON v. KRAUSE et al.

MILLER, Judge.

Daniel Dixon filed suit against Justin Wayne Krause, a police officer with the Greenville Police Department, in his individual and official capacity, and the City of Greenville (the "City"), raising federal and state claims for malicious prosecution and seeking attorney fees. The trial court granted summary judgment to Krause and the City, finding that the totality of the circumstances established probable cause to support the arrest, imprisonment, and prosecution of Dixon and, as a result, Dixon's claims failed as a matter of law.[1] Dixon appeals, contending that the trial court erred

---

[1] Dixon also raised claims of wrongful arrest and false imprisonment, and the trial court granted summary judgment on these counts. On appeal, Dixon challenges only the grant of summary judgment on the malicious prosecution claims.

in granting summary judgment because there were questions of fact as to whether probable cause existed to prosecute him on several offenses. We agree and reverse.

"On appeal from the grant of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law." (Footnote omitted.) *McKissick v. S.O.A., Inc.*, 299 Ga. App. 772 (684 SE2d 24) (2009).

Construed in the light most favorable to Dixon, as the nonmovant, the evidence shows that at approximately 1:00 a.m. on July 16th, 2009, Krause, the sole officer on duty, was patrolling the area of Terrell Street in the City, located in Meriwether County. While patrolling, Krause observed a red motorcycle approaching. The motorcycle stopped at the intersection of Hill and Terrell Streets and remained there for about two minutes. As the motorcycle drove past him, Krause observed that the motorcycle's tag was displayed not on the rear of the bike as required, but on the side. Krause also observed that the driver was wearing a shirt and jeans and had a full helmet with a visor. Based on his observations of the driver's eyes and nose, Krause

2

believed that the driver was black. Krause turned around and pursued the motorcycle to initiate a traffic stop.

When Krause activated his patrol lights, the motorcycle accelerated and headed toward Troup County. Krause then contacted dispatch and advised that he was in pursuit of a black male on a red motorcycle. Krause later reiterated to dispatch that the suspect was a black male and that he had gotten a good look at the driver of the motorcycle. During the chase, the motorcyclist drove at a rate in excess of 100 mph and passed another vehicle in a no-passing zone.

Soon after entering Troup County, Krause lost sight of the motorcycle. While Krause was searching the area, he encountered Troup County Deputy Sheriff Rick White, who had been notified through Troup County 911 radio traffic that officers were in pursuit of a black driver on a motorcycle coming into Troup County. The police officers waited near an elementary school at the intersection of Mountville Road and State Highway 109. While waiting, Krause and White heard radio traffic that the LaGrange police were chasing a motorcycle, and a few minutes later, Krause and White heard a motorcycle approaching from the LaGrange area at a high rate of speed. Both Krause and White anticipated that the motorcycle would be the same motorcycle that Krause had previously been chasing because a motorcycle involved

3

in another police chase was heading in their direction and motorcycle chases are very rare.

Around the same time, Dixon was heading home after leaving his friend's house located about a mile away from the intersection of Mountville Road and Highway 109. Dixon had been at his friend's house from approximately 11 p.m. on July 15 to 1:30 a. m. on July 16, and did not go anywhere else during this time. Dixon, a white male, was wearing a light blue shirt, jeans and a black-and-white helmet.

Dixon's motorcycle stopped at the intersection where Krause and White were waiting, and turned right. At that point, Krause observed that Dixon's motorcycle had its registration tag displayed on its side. Krause then activated his patrol lights to initiate a traffic stop because of the tag placement, the color of Dixon's bike (silver, black, and red), and the fact that Dixon was wearing a helmet were characteristics that matched the first motorcycle he had been chasing. Dixon proceeded to drive a short distance down the road and stopped when he saw Krause's patrol lights. Krause then pulled in front of the motorcycle, ordered Dixon to turn off his motorcycle and get on the ground, and placed Dixon in handcuffs.

4

During the stop, Krause and White both noticed the smell of alcohol on Dixon. Krause asked Dixon for consent to an alcohol breath test and Dixon refused. Dixon was then arrested.

While Dixon was in the patrol car, a LaGrange police officer came to the scene to identify whether Dixon was the individual the LaGrange police had been chasing. The LaGrange police officer looked at Dixon's motorcycle and concluded that Dixon was not the motorcyclist he had been chasing because Dixon's motorcycle was silver in color and the motorcycle that he chased was red.

After transporting Dixon to jail, Krause secured an arrest warrant. Krause could not recall whether he informed the magistrate judge that he had originally identified the motorcycle driver as a black male. In preparing the arrest report, Krause identified the subject (Dixon) as a white male, and made no reference to having previously identified the suspect as a black male. Krause subsequently discussed the incident with the City's Chief of Police, but again failed to mention that he had initially identified the suspect as a black male. Additionally, Krause failed to gather and submit audio and video tapes of the incident when he prepared the case file to be forwarded to the prosecutor in preparation for an indictment, as was the normal

5

practice. Given the ease in which an arresting officer can gather and submit recordings to the prosecutor, the Chief of Police could not explain why Krause failed to do so in this case.

When the prosecutor presented the case to the grand jury, he called Krause as the only witness, and the prosecutor was unaware that Krause had initially identified the suspect as a black male. Dixon was subsequently indicted by a grand jury on charges of fleeing or attempting to elude a police officer (OCGA § 40-6-395 (b) (5) (A)) (Count 1), DUI (OCGA § 40-6-391) (Count 2), reckless driving (OCGA § 40-6-390) (Count 3), driving without a license (OCGA § 40-5-20 (a)) (Count 4), improper passing (OCGA § 40-6-46) (Count 5), failure to maintain lane (OCGA § 40-6-48) (Count 6), and improper display of license plates (OCGA § 40-2-41) (Count 7).

Just before trial, the prosecutor received the recorded dispatch calls in which Krause stated that the suspect was a black male. The prosecutor then nolle prossed all charges against Dixon, because Krause had withheld the fact that he had identified the suspect as a black male in the radio calls to dispatch, and the prosecutor did not believe he could obtain a conviction since the original suspect and Dixon were not the same race. The prosecuting attorney explained that he relies upon the information

provided by the arresting officer in pursuing an indictment, including the officer's description of a suspect, and that Krause should have supplied that information.

After dismissal of the criminal charges, Dixon filed suit against Krause and the City, raising state and federal malicious prosecution claims based on the lack of probable cause to indict him on counts 1, 3, 5 and 6 of the indictment. Dixon appeals from the grant of summary judgment to Krause and the City.

Dixon contends that in granting summary judgment to Krause on the state and federal malicious prosecution claims, the trial court erred in concluding as a matter of law that there was probable cause to indict him on charges related to the initial high-speed chase originating in the City – fleeing, reckless driving, improper passing, and failure to maintain lane.[2] We agree that questions of material fact remain as to this issue.

---

[2] In this case, there is no dispute that Krause had probable cause to arrest Dixon for DUI (Count 2), driving without a license (Count 4), and improper display of license plates (Count 7). However, since these offenses arose from a separate transaction – the stop of Dixon – the probable cause to arrest Dixon for Counts 2, 4, and 7 would not preclude a malicious prosecution claim as to Counts 1, 3, 5, and 6. See *Remeneski v. Klinakis*, 222 Ga. App. 12, 15 (1) (473 SE2d 223) (1996) (holding that a finding of probable cause as to one related offense arising from the same transaction is a binding determination that there was probable cause for all related charges arising from the same transaction or occurrence).

"On motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving party and all doubts are to be resolved against the movant. The movant has that burden even as to issues upon which the opposing party would have the trial burden." (Citation omitted.) *Sawgrass Builders, Inc. v. Key*, 212 Ga. App. 138 (1) (441 SE2d 99) (1994). A defendant is entitled to summary judgment only if the defendant establishes that the plaintiff is unable to prove at least one essential element of his case. See *Diaz v. Wild Adventures, Inc.*, 289 Ga. App. 889, 892 (658 SE2d 362) (2008).

"In order to prevail on a claim for malicious prosecution, a plaintiff must show the following: (1) a criminal prosecution; (2) instigated without probable cause; (3) with malice; (4) pursuant to a valid warrant, accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." (Punctuation and footnote omitted.) *McNeely v. Home Depot, Inc.*, 275 Ga. App. 480, 482 (621 SE2d 473) (2005); see also OCGA § 51-7-40. Where a federal claim for malicious prosecution is alleged, as is the case here, state law supplies the essential elements. See *Uboh v. Reno*, 141 F.3d 1000, 1004 (II) (11th Cir. 1998).

> The gravamen of the complaint for malicious prosecution is the absence of probable cause on the part of the person instituting the prosecution. Probable cause is absent when the circumstances are such as to satisfy

8

a reasonable person that the accuser had no ground for proceeding but his desire to injure the accused. The determination is dependent upon whether the facts as they appeared at the time of instituting the prosecution were such as to lead a person of ordinary caution to entertain a belief that the accused was guilty of the offense charged.

(Citations and punctuation omitted.) *Jones v. Warner*, 301 Ga. App. 39, 42 (2) (686 SE2d 835) (2009).

Generally, a jury decides whether probable cause exists, and the trial court determines the issue only when the material facts are undisputed. See, e.g., *K-Mart Corp. v. Coker*, 261 Ga. 745, 746 (1) (410 SE2d 425) (1991); *Ye v. Kroger Co.*, 252 Ga. App. 712, 713 (1) (556 SE2d 87) (2001). See also OCGA § 51-7-43 ("Lack of probable cause shall be a question for the jury, under the direction of the court.").

Here, Krause and the City failed to establish that they were entitled to summary judgment as a matter of law because there are questions of material fact regarding whether Krause had probable cause to believe that Dixon committed the offenses related to the initial chase. Viewing the evidence in Dixon's favor, as we must, the evidence shows that Dixon was not the individual involved in the original motorcycle chase starting in the City. Notably, Dixon deposed that he was at a friend's house at the time Krause first reported that he was in pursuit of a red a motorcycle. Indeed, Dixon was at the friend's house for several hours prior to being stopped by Krause.

9

Additionally, Krause made multiple reports to dispatch that he was in pursuit of a black male, he reported that he had gotten a good look at the driver of the motorcycle, and Officer White heard reports through 911 radio traffic that Krause was in pursuit of a black motorcyclist. It is undisputed that Dixon is a white male.

Krause points to the circumstances of his identification, such as the fact that he only briefly got a glimpse of the initial motorcyclist in dimly-lit conditions, to show that it was reasonable that he made a misidentification of the initial motorcyclist, and he argues that any error on his part was not fatal to a probable cause analysis. To adopt Krause's argument, we would have to view the evidence in his favor, which we are not permitted to do. When viewed in Dixon's favor, the evidence shows that Krause unequivocally stated that he got a good look at the suspect. Nevertheless, the circumstances of Krause's identification must be considered and resolved by the jury, as the finder of fact, not by the trial court or this Court. See *Wimberly v. State,* 233 Ga. 386, 387 (3) (211 SE2d 281) (1974) ("Identity is a question for the [trier] of fact, and where a witness identifies a defendant . . . the credibility of the witness making such identification is not to be decided by [a] court.") (citations and punctuation omitted).

Krause further argues that he had a reasonable belief that Dixon was the motorcyclist that he previously chased, but his claim can be disputed by the evidence. In particular, Krause argues that he had probable cause because Dixon was driving a red motorcycle just like the motorcycle he chased, he lost the first motorcycle in the area where he encountered Dixon, and he overhead dispatch reports that the LaGrange police were chasing the same motorcycle he had chased. The evidence shows, however, that Dixon was not the individual involved in the high-speed chase in LaGrange, because a LaGrange police officer confirmed that the motorcycle he chased was red in color, while Dixon's was silver. Although there is some evidence that Dixon's motorcycle also had some red paint, it is a question of fact to be resolved by a jury as to whether Dixon's motorcycle would be classified as red, as Krause described the first motorcycle , or silver, as suggested by the LaGrange police officer.

Finally, the "reasonableness" of Krause's belief that Dixon was the initial motorcyclist is belied by the fact that, in readying the case for prosecution, he failed to set forth a full, fair and complete statement of the facts. As discussed above, Krause failed to tell his supervisor, the Chief of Police, the prosecutor, or the grand jury, that he had initially identified the suspect as a black male. Moreover, the evidence supports an inference that Krause deliberately withheld this information

11

from the prosecutor, because his statements identifying the "black male" were recorded, these recorded statements were readily accessible, and there was no apparent reason why Krause failed to provide these recordings to the prosecutor. Given Krause's concealment of facts, a jury could conclude that his belief that probable cause existed was not "honest" or "reasonable." See *Willis v. Brassell*, 220 Ga. App. 348, 353 (4) (469 SE2d 733) (1996) (probable cause cannot exist if defendant failed to make a fair, full, and complete statement of the facts as they existed, or if he concealed facts); see also *Holmes v. Achor Center, Inc.*, 249 Ga. App. 184, 192 (2) (b) (547 SE2d 332) (2001) (where material issues can be eliminated only by making credibility judgments, the movant has not met his burden to be entitled to summary judgment).

Given these questions of material fact, the trial court was not permitted to decide the issue of probable cause, and we reverse the trial court's grant of summary judgment on the malicious prosecution claims. Since we conclude that the malicious prosecution claims survive, the trial court erred in granting summary judgment on Dixon's derivative claim for attorney fees. See *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012).

*Judgment reversed. Andrews, P. J., and Branch, J., concur*.

12