**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 25, 2016**

# In the Court of Appeals of Georgia

A15A2006. ZOOK v. ARCH SPECIALTY INSURANCE
     COMPANY.

A16A0467. MJQ CONCOURSE, INC. et al. v. ARCH SPECIALTY
     INSURANCE COMPANY.

PHIPPS, Presiding Judge.

Carl D. Zook filed a personal injury action against MJQ Concourse, Inc. and
several of its employees ("MJQ" or "the insured") for damages arising out of an
incident at the insured's nightclub.[1] Specifically, Zook raised claims of false
imprisonment, battery, negligence, malicious prosecution, and malicious arrest. While
that action was pending, Zook filed a declaratory judgment action against the same
defendants and Arch Specialty Insurance Company ("Arch"), with which MJQ had

---

[1] At the time of the incident, the nightclub, which was known as "MJQ
Concourse," was owned by Terminus, Inc., a named defendant in the personal injury
complaint. That entity later changed its name to MJQ Concourse, Inc.

a commercial general liability ("CGL") insurance policy. The trial court granted summary judgment to Arch in the declaratory judgment action, finding that the alleged malicious prosecution occurred outside the policy period and that the insurance coverage for Zook's remaining claims was subject to a $50,000 sublimit imposed by an Assault and Battery endorsement, rather than the $1,000,000 general liability limit.

In Case No. A15A2006, Zook appeals from two orders granting summary judgment to Arch in the declaratory judgment action. In Case No. A16A0467, MJQ appeals from the same summary judgment orders but limits its argument on appeal to the trial court's ruling regarding the malicious prosecution claim. For the reasons that follow, the trial court erred in finding that the claim for malicious prosecution was not covered by the policy. However, the trial court properly concluded that coverage on Zook's remaining claims was limited to $50,000.

We review de novo the trial court's grant of summary judgment to determine "whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact."[2] Summary judgment is proper

_____

[2] *Bd. of Commrs. of Crisp County v. City Commrs. of City of Cordele*, 315 Ga. App. 696 (727 SE2d 524) (2012) (punctuation and footnote omitted).

when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3]

In his personal injury complaint,[4] Zook alleged that he was a patron at the insured's nightclub on the evening of May 21, 2009. Zook attempted to access a restroom but was denied entry by appellant Chad Phillips, an employee of MJQ. Then, according to the complaint, "[w]ithout provocation or justification, defendant Phillips [and other employees of the insured] beat Mr. Zook repeatedly about the face and body, seriously injuring plaintiff." Zook managed to free himself and run outside the nightclub, where he called 911 for emergency assistance. The police, however, arrested Zook, who was prosecuted for simple battery.

Zook subsequently sued MJQ and various MJQ employees for false imprisonment (both inside the nightclub and as the result of Zook's arrest and incarceration ), battery, and negligence (against appellants MJQ, Benjamin Rhoades, and Armando Celentano in the screening, hiring, and retention of appellant Phillips

---

[3] OCGA § 9-11-56 (c).

[4] The parties submitted a joint stipulation with exhibits for the purpose of the declaratory judgment action. These exhibits included pleadings from the underlying personal injury lawsuit, a partial transcript of the criminal proceeding in which Zook was charged with and acquitted of simple battery, and the Arch insurance policy and related correspondence.

3

and other MJQ employees). Zook later amended his complaint to add claims for malicious prosecution and malicious arrest after he was found not guilty of the criminal charge arising out of the incident.

The parties stipulated that testimony presented at Zook's criminal trial could be considered as evidence in the declaratory judgment action, noting that there was a dispute between the parties as to what happened after Zook was denied access to the restroom. Both Phillips and Zook called 911 for emergency assistance on the night in question, and audio recordings of those calls were played at Zook's criminal trial.

In the call made by Phillips, Phillips stated at the outset that he had been attacked by an individual and that he wanted to press charges. Phillips repeated that "this guy attacked me," that "the assailant punched me in the face repeatedly," and that Phillips "retaliated in self-defense." In Zook's 911 call, he requested an ambulance, expressing particular concern for his eye and stating that security at the club had "beat [him] down."

The officer who responded to the 911 calls filled out an "arrest citation," ordering Zook to appear in municipal court. The officer wrote that Zook had committed the offense of "disorderly conduct" under a municipal ordinance in that he did:

4

act in a violent manner towards the victim. Witness stated that suspect chest bumped victim, and also punched victim in the face. Victim told suspect he couldn't come into a portion of the location, and Suspect got mad. Suspect also told witness he was going to punch victim.

The municipal court transferred the case to the State Court of Fulton County on May 26, 2009, and released Zook on bond. Some months later, on March 1, 2010, the county solicitor general charged Zook with simple battery, alleging that "on MAY 21, 2009 [Zook] did intentionally make physical contact of an [sic] PROVOKING nature with the person of CHAD PHILLIPS."

At Zook's criminal trial, Phillips testified that, while working as a sound engineer for MJQ, he was putting away equipment after a band finished playing in one of the rooms at the nightclub. Phillips overheard other employees telling Zook that he could not access the restroom in that part of the nightclub because it was closed. Phillips reiterated the message to Zook, who had become very agitated. Phillips left the area to finish other duties and then returned to tell his coworker that he was done for the evening. The moment Phillips opened the door, someone (whom he later identified as Zook) punched him in the face. Phillips pulled Zook into the hallway away from the crowd in the nightclub so that the situation would not escalate.

5

Phillips struggled to restrain Zook until a coworker separated them, and Phillips made his 911 call.

Zook testified in his defense that, prior to the evening in question, he had frequently visited MJQ, where he was "kind of a VIP at the club." When he attempted to access the back restroom, MJQ employees denied him access, taunting him and telling him to leave. Zook continued:

> And they slammed the door in my face and literally hit me in the face with the door. I turned around to walk away, and something told me to kind of look back, because I just didn't feel comfortable. They pulled the door open and came charging at me. At that point, it's a little bit hazy because it was dark. And I know [Phillips] came at me first, and me and [Phillips] had an altercation at that point. . . . Then while I was trying to assess the situation, they grabbed me by my shirt and pulled me into the back room. And when they pulled me into the back room, [Phillips] jumped on me and held me down like this while different people took turns punching me and kicking me in the face. And I was on the ground going please stop, please stop. I'm not fighting. . . . . And there was a point when I'm just like, I'm going to die. They're going to kill me. And for whatever reason, I just was able to just run out the door. . . . And finally, you know, I got up and I ran out the door, and the off-duty officer followed me out, while they followed me and continued to taunt me, telling me they were going to beat me up more, and I was shaking and trying to call 911.

At the conclusion of the trial, a jury found Zook not guilty of simple battery.

In his declaratory judgment complaint, Zook argued that the policy limits were $1,000,000 for his claims for false arrest, detention, or imprisonment and for malicious prosecution. MJQ filed a cross-claim against Arch, agreeing with Zook that the occurrences giving rise to the alleged assault and those giving rise to the alleged malicious prosecution were two separate and distinct occurrences and that the latter was not limited by the $50,000 sublimit imposed by the assault and battery endorsement. The parties filed cross-motions for summary judgment.

The trial court found that the policy did not cover the claim of malicious prosecution because the prosecution occurred outside of the policy period. In a separate order, the trial court found that the policy was clear and that "all of the claims in [Zook's] underlying complaint arise out of an assault and/or battery and that the assault and battery endorsement applies to limit the coverage available to $50,000 for all [Zook's] claims."

*Case No. A15A2006*

1. The trial court found that there was no coverage for Zook's malicious prosecution claim because the prosecution occurred outside the policy period. Zook argues on appeal that the trial court erred. We agree and reverse as to this claim of

7

error because the record does not show that Arch was entitled to judgment as a matter of law. Although Zook was not charged with simple battery until March 1, 2010, the nightclub incident and arrest occurred on May 21, 2009, within the policy period (June 27, 2008, through June 27, 2009).

> Under Georgia law:

> The six essential elements of a malicious prosecution claim are (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff. As the fourth element makes clear, to be actionable as a malicious prosecution under our precedents, an attempt to have someone prosecuted must result in the issuance of a valid warrant, summons, accusation, or other formal process.[5]

For purposes of determining when the statute of limitation begins to run, "[t]he criminal prosecution forming the basis for an action for malicious prosecution must be ended before the right of action for malicious prosecution accrues."[6]

---

[5] *Renton v. Watson*, 319 Ga. App. 896, 898 (1) (739 SE2d 19) (2013) (citing OCGA § 51-7-40) (punctuation and citations omitted).

[6] OCGA § 51-7-41; see *Valades v. Uslu*, 301 Ga. App. 885, 889 (1) (689 SE2d 338) (2009).

Georgia appellate courts have not addressed when a malicious prosecution claim arises for purposes of triggering insurance coverage when the language of the contract does not specify. Other jurisdictions are split, with a small minority of courts requiring favorable termination of the underlying proceeding,[7] and the majority holding that coverage is triggered when the insured sets in motion the legal machinery of the state.[8] "Under the minority rule, there is a confluence between the date on which the tort occurs for insurance purposes and the date on which the statute of limitation begins to run."[9] The majority of courts, however, have rejected the idea that they are bound by the statute of limitation as the underlying purpose is different.[10] "Statutes of limitation are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has

---

[7] See, e.g., *Sauviac v. Dobbins*, 949 S2d 513, 519 (La. Ct. App. 2006) (finding insurance coverage for "offense" committed during the policy period); *Roess v. St. Paul Fire & Marine Ins. Co.*, 383 FSupp 1231, 1235 (M.D. Fla. 1974) (requiring conclusion of appeal of underlying *civil* case against the plaintiff to trigger insurance coverage under Florida law).

[8] *Genesis Ins. Co. v. City of Council Bluffs*, 677 F3d 806, 812-813 (8th Cir. 2012) (collecting cases).

[9] *City of Erie v. Guaranty Natl. Ins. Co.*, 109 F3d 156, 161 (B) (3) (3rd Cir. 1997) (interpreting Pennsylvania law).

[10] Id.

been lost, memories have faded, and witnesses have disappeared."[11] By contrast, courts generally construe insurance contracts in accordance with the reasonable expectations of the insured.[12]

Arch contends that, under either the majority or the minority rule, the alleged malicious prosecution did not fall within the coverage period because the prosecutor did not charge Zook with simple battery until March 1, 2010. We disagree with Arch's interpretation of the majority rule. Arch relies on *City of Erie v. Guaranty Nat. Ins. Co.*[13] In that case, the plaintiff was arrested and charged on the same date, so the Third Circuit did not need to distinguish between the two in finding that coverage

---

[11] *MARTA v. Reid*, 295 Ga. 863, 867 (763 SE2d 695) (2014) (citation and punctuation omitted).

[12] *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (2) (498 SE2d 492) (1998). See also *State Auto Property & Cas. Co. v. Matty*, 286 Ga. 611, 614-615 (2) & n.1 (690 SE2d 614) (2010) (adopting the "cause" theory for construing the word "accident" when it is not defined in an automobile liability insurance policy but expressing no opinion regarding the application of the theory to products liability, a tort that may have delayed manifestation injuries and damages).

[13] Supra.

was triggered.[14] The rationale behind the majority rule is that the "bad act" was done when the insured set the legal machinery of the state in action.[15]

While Zook did not have a cause of action for malicious prosecution (and the statute of limitation thus did not begin to run) until favorable termination of the underlying criminal proceeding, the policy covered injury arising out of "malicious prosecution" if the "offense" was committed during the policy period. Once Phillips called 911 and gave a report to the responding officer, who then arrested Zook, the legal machinery of the state was set into motion.[16]

The parties do not dispute that Zook was arrested and required to post bail within the coverage period. The fact that Zook was initially arrested for disorderly conduct but ultimately prosecuted for simple battery is irrelevant, as the insured set

---

[14] Id. at 158.

[15] See *S. Freedman & Sons, Inc. v. Hartford Fire Ins. Co.*, 396 A2d 195, 199 (D.C. App. 1978). See also *St. Paul Fire & Marine Ins. Co. v. City of Zion*, 18 NE3d 193, 200 (Ill. App. 2014) ("When a prosecution is commenced, the accused is arrested, required to post bail to secure his liberty pending trial, and his reputation is adversely affected.") (citation and punctuation omitted).

[16] See *S. Freedman & Sons*, supra. See also *Muller Fuel Oil Co. v. Ins. Co. of N. America*, 232 A2d 168 (N.J. Super. Ct. App. Div. 1967) (finding that "the 'essence' of the tort is the wrongful conduct in making the criminal charge" in a case where the criminal complaint, arrest, and indictment all occurred before insurance coverage began).

11

the prosecution in motion on the night of the incident. Phillips told the 911 operator twice that he had been attacked and stated that Zook had punched him in the face repeatedly. Arch argues that Zook was not charged with the crime for which he was actually prosecuted (simple battery) until 2010, well outside the policy period. However, the responding officer's narrative of the facts on the arrest citation shows that the "victim" (Phillips) and a "witness" reported a battery to the officer.[17] At the point of arrest, Phillips, acting on behalf of the insured, invoked the judicial process against Zook.[18]

From the standpoint of a reasonable person in the position of the insured, policy coverage for injury arising from a malicious prosecution occurring during the policy period exists if the insured's conduct in instituting such a prosecution took place during the covered period. For the foregoing reasons, we adopt the majority rule that when the contract does not specify, insurance coverage is triggered on a potential

---

[17] See OCGA § 16-5-23(a) ("A person commits the offense of simple battery when he or she either: (1) Intentionally makes physical contact of an insulting or provoking nature with the person of another; or (2) Intentionally causes physical harm to another.").

[18] See *Dixon v. Krause*, 333 Ga. App. 416, 419 (773 SE2d 40) (2015) ("The gravamen of the complaint for malicious prosecution is the absence of probable cause on the part of the person instituting the prosecution.").

12

claim for malicious prosecution when the insured sets in motion the legal machinery of the state. Accordingly, we reverse the trial court's order granting summary judgment in favor of Arch on the malicious prosecution claim.

2. Zook also contends that the trial court erred by finding that insurance coverage on the false imprisonment and false arrest claims were subject to the $50,000 policy limit in the assault and battery endorsement. Zook argues that these claims were independent of any assault or battery.

The CGL policy provided coverage for "Personal and Advertising Injury Liability." Arch agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." "Personal and advertising injury" was defined as "injury, including consequential 'bodily injury,' arising out of" various listed offenses, including "[f]alse arrest, detention or imprisonment" and "[m]alicious prosecution." The policy further provided that it "applie[d] to 'personal and advertising injury' caused by an offense arising out of [the insured's] business but only if the offense was committed . . . during the policy period."

The CGL policy generally provided a personal and advertising liability limit of $1,000,000, but referenced specific exclusions and endorsements listed in an

13

attached schedule. One of these was an "Assault and Battery Coverage Endorsement," which provided an aggregate limit of $50,000 for "damages because of all 'personal injury' arising out of 'assault and/or battery' sustained during the policy period." The Assault and Battery Coverage endorsement stated in its heading: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."

"The cardinal rule of [contract] construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, [the contract] shall be enforced irrespective of all technical or arbitrary rules of construction."[19] When a policy of insurance is so drawn as to require an interpretation, and it is fairly susceptible to two different constructions, the construction to be adopted will be the one most favorable to the insured.[20] "In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean."[21]

---

[19] OCGA § 13-2-3.

[20] *Western Pac. Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 680-681 (1) (601 SE2d 363) (2004).

[21] *Bartlett v. American Alliance Ins. Co.*, 206 Ga. App. 252, 255 (2) (424 SE2d 825) (1992) (citation and punctuation omitted).

Zook argues on appeal that his false imprisonment[22] and arrest[23] did not arise out of assault and battery. We disagree. As Zook testified in his criminal proceeding, MJQ employees slammed the door in his face, literally hitting him in the face with the door. As Zook tried to walk away, they grabbed him by his shirt and pulled him into a back room where Phillips held him down and other individuals punched and kicked him until Zook managed to escape. Both Zook and Phillips called 911 to report the incident, and the responding officer arrested Zook.

Under the clear language of the endorsement, Zook's damages for false imprisonment and false arrest arise out of an alleged assault and battery.[24] According

---

[22] Under Georgia law, false imprisonment is "unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. See *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 160-161 (4) (561 SE2d 483) (2002) (noting that the restraint may be accomplished by either force or conduct sufficient to induce a reasonable fear of force).

[23] See OCGA § 51-7-1 ("An arrest under process of law, without probable cause, when made maliciously, shall give a right of action to the party arrested."); *Ferrell v. Mikula*, 295 Ga. App. 326, 329-333 (2) (672 SE2d 7) (2008) (distinguishing malicious arrest from false imprisonment and malicious prosecution).

[24] See *Continental Cas. Co. v. Hsi Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996) (finding that claims for negligence and malpractice against law partners "arose out of" conduct in exclusionary clause where "but for" the tortfeasor's conduct, there could be no claim against his partners). See also *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998) (finding no material distinction in this context between "caused by" and "arose out of").

15

to his testimony, the incident began when he was struck with the door and grabbed by his shirt, which are batteries.[25] Assault and battery were the genesis of Zook's claims for false imprisonment and arrest.[26] Accordingly, the trial court did not err in finding that, under the policy, Zook's claim for damages for false imprisonment "arose out of" an assault and battery and were thus subject to the $50,000 sublimit in the assault and battery endorsement.[27]

3. Zook next contends that the policy is at least ambiguous and should therefore be construed in favor of coverage. We disagree as the language in the endorsement applying to "all 'personal injury' arising out of 'assault and/or battery'" is clear and must be given effect.[28]

*Case No. A16A0467*

---

[25] *Kohler v. Van Peteghem*, 330 Ga. App. 230, 234 (1) (767 SE2d 775) (2014) ("The touching of another without her consent, even if minimal, constitutes a battery. Moreover, the unlawful touching of a person's body is actionable even if the unlawful touching is indirect, as by throwing an object or substance at the person.") (citations and punctuation omitted).

[26] See *Continental Cas. Co.*, supra.

[27] See *Bartlett*, supra at 254-255 (1) (giving ordinary meaning to "bodily" injury liability coverage and finding that it did not include spouse's damages for loss of consortium).

[28] See id.

16

4. MJQ contends that the trial court erred in granting summary judgment to Arch on the malicious prosecution claim because Arch owed it a duty to defend under the general liability policy. In Case No. A15A2006, we reversed the award of summary judgment on this claim. MJQ's argument in Case No. A16A0467, therefore, is moot, and this appeal must be dismissed. We note, however, that the trial court did not address – and thus we do not reach – whether the assault and battery endorsement limited Arch's duties and coverage for the malicious prosecution claim.

*Judgment in Case No. A15A2006 affirmed in part and reversed in part. Appeal in Case No. A16A0647 dismissed as moot. Doyle, C. J., and Boggs, J., concur.*